A06A1023. THE STATE v. NORRIS.
(635 SE2d 810)

PHIPPS, Judge.

James Norris was charged with DUI, failure to maintain lane, and possession of an open container of alcoholic beverage while operating a vehicle. He filed a motion to suppress various evidence, including the results of two alco-sensor tests administered to him during a traffic stop. The trial court granted Norris's motion to suppress the results of the alco-sensor tests. Under the authority of OCGA § 5-7-1 (a) (4), the State appeals. Under the "right for any reason" rule, we affirm.

The only witnesses who testified at the hearing on the motion to suppress were the two officers who participated in the traffic stop, Lieutenant Chris Jones and Captain Al Thompson of the Dooly County Sheriff's Department. Each of their patrol cars was equipped with audio/video recorders that captured parts of the traffic stop. Those tapes were played at the hearing on the motion to suppress. The evidence presented at the hearing showed the following.

On April 29, 2004, Jones observed Norris's truck weaving in and out of its lane of travel on Interstate 75. Jones stopped the truck and asked Norris to step out of the vehicle. When Norris did so, he appeared unsteady on his feet and exuded an odor of alcoholic beverage. Jones, therefore, asked Norris to provide a breath sample by blowing into an alco-sensor machine, but Norris refused.

Jones testified that because he thought he had probable cause to believe that Norris was driving under the influence of alcohol even without the results of the alco-sensor test, he then explained to him that he was going to arrest him for DUI and asked him to turn around and put his hands behind his back. Jones's videotape of the traffic stop clearly shows, however, that although Jones instructed Norris to turn around and put his hands behind his back after he refused to perform the alco-sensor test, Jones did not tell Norris that he was under arrest for DUI. In any event, Norris thereupon asked whether he had to give the breath sample. Jones testified that he responded in the affirmative, even though he knew that Norris had a legal right to decline. Norris then performed the breath test.

Because Norris's breath sample registered positive for alcohol, Jones summoned Thompson to the scene to administer a second alco-sensor test to Norris. Because the second test also registered positive for alcohol, Jones then told Norris he was arresting him for DUI, handcuffed him, and began to read him his implied consent notice. While Jones was doing so, Norris collapsed into the roadway. After the officers pulled him to the side of the road, he regained consciousness, and the officers summoned an ambulance. Norris, however, refused medical treatment. Jones completed the reading of

the implied consent notice and asked Norris whether he would submit to a state-administered blood test. Norris refused.

Norris moved to suppress evidence of the results of the alco-sensor tests, evidence of his refusal to submit to the blood test, and the audio and video recordings of the traffic stop. The trial court suppressed the results of the alco-sensor tests but refused to suppress evidence of Norris's refusal to submit to the blood test and the recordings of the traffic stop. In so ruling, the court determined that Jones was authorized to stop Norris's truck after observing it weaving. The court, however, rejected Norris's claim that Jones coerced him into taking the alco-sensor tests by placing him under arrest when he refused to submit to the first test. The court determined that Norris had not been arrested at the time he agreed to perform the alco-sensor test because Jones had not told him he was under arrest and had not yet handcuffed him. Nonetheless, the court determined that, contrary to Georgia's implied consent law, Jones deprived Norris of his right to make an informed decision as to whether to perform the first alco-sensor test by misinforming him that he had to take the test rather than by telling him he had a right to refuse.

"Georgia law recognizes three tiers of police-citizen encounters: (1) consensual encounters; (2) brief detentions that must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause."[1] A law enforcement officer's stop and detention of a motorist to investigate a possible DUI violation is a second-tier encounter.[2] The detention escalates to a third-tier encounter if the officer determines that he has probable cause to believe the motorist has been driving under the influence and arrests him for DUI.[3]

OCGA § 40-5-55, commonly referred to as Georgia's implied consent statute, provides in subsection (a) that

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities.

---

[1] *Hendrix v. State*, 273 Ga. App. 792, 794 (1) (616 SE2d 127) (2005) (punctuation and footnote omitted).

[2] See *Long v. State*, 271 Ga. App. 565, 568 (2) (610 SE2d 74) (2005).

[3] See *Childress v. State*, 251 Ga. App. 873, 874-876 (1) (554 SE2d 818) (2001).

Subsection (b) of OCGA § 40-5-55 recognizes, however, that a driver's implied consent to chemical testing of his bodily substances may be withdrawn.[4] So too does OCGA § 40-6-392,[5] the statute that governs the administration of chemical tests for alcohol or drugs and the admissibility of the results of such tests in DUI proceedings.

In *Turrentine v. State*,[6] we found OCGA § 40-6-392 inapplicable to alco-sensor test results because they are not used as "evidence of the *amount* of alcohol or drug in a person's blood,"[7] as specified in OCGA § 40-6-392 (a), but instead are used "as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol."[8] In contrast, OCGA § 40-5-55 applies to chemical tests of the "blood, breath, urine, or other bodily substances for the purpose of determining the *presence* of alcohol or any other drug."[9] Thus, it does apply to an alco-sensor test.

In *Cooper v. State*,[10] our Supreme Court held that

> to the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities regardless of any determination of probable cause, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions.[11]

In light of *Cooper*, we held in *Buchanan v. State*[12] that OCGA § 40-5-55 provides that consent is implied only if a person is placed under a third-tier arrest based on probable cause to believe he has violated OCGA § 40-6-391 (our DUI statute).[13] A third-tier arrest is thus a full-blown custodial arrest as opposed to a temporary second-tier investigative detention.[14]

The test for determining whether a person has been placed under custodial arrest

---

[4] See *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985).

[5] See id.; OCGA § 40-6-392 (d).

[6] 176 Ga. App. 145 (335 SE2d 630) (1985).

[7] Id. at 146 (1) (punctuation omitted; emphasis in original).

[8] Id.

[9] OCGA § 40-5-55 (a) (emphasis supplied).

[10] 277 Ga. 282 (587 SE2d 605) (2003).

[11] Id. at 291.

[12] 264 Ga. App. 148 (589 SE2d 876) (2003).

[13] Id. at 150 (1).

[14] See *Evans v. State*, 267 Ga. App. 706, 706-707 (1) (600 SE2d 671) (2004).

> is whether the individual was formally arrested or re-strained to a degree associated with a formal arrest, not whether the police had probable cause to arrest. The test . . . is whether a reasonable person in the suspect's position would have thought the detention would not be temporary. A trial court deciding whether to admit evidence must apply this objective test; it is the reasonable belief of an ordinary person under such circumstances, and not the subjective belief or intent of the officer, that determines whether an arrest has been effected.[15]

The issue is a mixed question of law and fact.[16] Therefore, to the extent that determination of the issue hinges on resolution of factual questions, we construe the evidence most favorably to uphold the trial court's findings and accept those findings unless they are clearly erroneous; but we independently apply the legal principles to those facts.[17]

Here, the trial court determined that Jones did not place Norris under arrest based on its finding that Jones merely asked Norris to turn around and place his hands behind his back after he refused to perform the alco-sensor test, and that Jones did not tell Norris he was under arrest. Construing the evidence most favorably to those findings, we uphold them. But even though the trial court found that Jones did not inform Norris that he was under arrest, the court did find that he instructed him to turn around and place his hands behind his back. Upon being told that, without more, a reasonable person in Norris's position would have thought that he was going to be hand-cuffed and formally arrested or restrained to a degree associated with a formal arrest.[18] Thus, applying the law to the facts found by the trial court, we conclude that Norris's detention ripened into a custodial arrest for DUI even though Norris was not expressly informed that he was being arrested for a DUI violation.

As a result, OCGA § 40-5-55 then became applicable. Norris's implied consent to breath testing, and his right to withdraw his consent, were therefore in effect when he asked Jones whether he had to take the alco-sensor test. For these reasons, we agree with the trial court that Norris was given inaccurate information depriving him of the ability to make an informed decision as to whether to take the

---

[15] *State v. Dixon*, 267 Ga. App. 320, 321 (599 SE2d 284) (2004) (citations, punctuation and emphasis omitted).

[16] *State v. Lentsch*, 252 Ga. App. 655, 657 (1) (556 SE2d 248) (2001).

[17] See *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

[18] Compare *Abrahamson v. State*, 276 Ga. App. 584 (623 SE2d 764) (2005) (defendant not handcuffed); *State v. Dixon*, supra (same).

alco-sensor tests.[19] Moreover, decisions by our Supreme Court in cases such as *Keenan v. State*[20] and *Price v. State*,[21] as well as decisions by this court in cases such as *State v. O'Donnell*,[22] hold that alco-sensor and other field sobriety tests given to a person under custodial arrest are inadmissible where, as here, administration of the tests has not been preceded by a *Miranda* warning.[23] Here, no *Miranda* warnings were given *and* the arresting officer misinformed Norris that he had to perform the test. Consequently, the trial court did not err in granting Norris's motion to suppress the results.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 18, 2006.

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellant.

*John W. Sherrer, Jr.,* for appellee.

---

[19] See generally *State v. Terry*, 236 Ga. App. 248 (511 SE2d 608) (1999); *State v. Leviner*, 213 Ga. App. 99, 100 (3) (443 SE2d 688) (1994).

[20] 263 Ga. 569, 571 (2) (436 SE2d 475) (1993).

[21] 269 Ga. 222, 224-225 (3) (498 SE2d 262) (1998).

[22] 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997).

[23] Other decisions of both the Supreme Court and this court call into question the accuracy of that view. See *Cooper v. State*, supra, 277 Ga. at 290 (Georgia Constitution does not protect citizens from compelled blood or breath testing or from use of results of compelled testing at trial); *Hughes v. State*, 259 Ga. 227, 228 (2) (b) (378 SE2d 853) (1989) (Fifth Amendment to United States Constitution has no application to results of field sobriety tests because they are not evidence of a testimonial or communicative nature); *Keenan v. State*, supra, 263 Ga. at 572 (2) (OCGA § 24-9-20 inapplicable to alco-sensor field sobriety test because defendant was not charged in a criminal proceeding at the time he was asked to take test); *Nawrocki v. State*, 235 Ga. App. 416, 417 (1) (510 SE2d 301) (1998) (use of a substance naturally excreted by human body does not violate defendant's right against self-incrimination under Art. I, Sec. I, Par. XVI of the Georgia Constitution). In any event, if Norris had not been placed under custodial arrest, it would appear that he would not have had a right to refuse to perform the alco-sensor test.