## A11A0678. THE STATE v. PADIDHAM.

### (714 SE2d 657)

PHIPPS, Presiding Judge.

Jyothiswar Padidham was charged with driving under the influence (DUI) and speeding. He moved to suppress certain evidence, including the result of an alco-sensor test administered during the traffic stop and the results of an Intoxilyzer 5000 test administered in jail. The trial court granted the motion, and the state appeals. We reverse.

The facts relevant to the motion to suppress are undisputed. On February 12, 2009, a police officer stopped Padidham's car for speeding. When the officer approached the car, he detected an odor of alcohol and noticed that Padidham's eyes were bloodshot. At the officer's request, Padidham got out of his car and submitted to several field sobriety tests. The officer contacted another officer to bring an alco-sensor device to the scene. While waiting for the other officer to arrive, he told Padidham to return to his (Padidham's) car because of the weather. The officer told Padidham that he had stopped him for speeding, that he was going to write him a ticket, and that he thought Padidham was too intoxicated to drive and was going to verify that. About eight to ten minutes later, when the second officer arrived, Padidham provided a breath sample; it showed the presence of alcohol. The officer then placed Padidham under arrest for DUI, handcuffed him and placed him in the police car. At that point, the officer read Padidham the Georgia implied consent notice, which advised him of, among other things, his right to undergo additional chemical tests at his own expense and from

personnel of his own choosing;[1] at the suppression hearing, the officer did not testify whether (or when) he advised Padidham of his *Miranda* rights.

At the jail, at about 2:11 a.m., officers gave Padidham a breath test using the Intoxilyzer 5000, which yielded two results (0.129 and 0.126). Padidham was not informed of the test results or given a copy of the test results until 10:00 a.m, as he was leaving the jail.

Padidham moved to suppress the alco-sensor test result on the basis that, inter alia, it was administered before he was read the implied consent notice or advised of his rights against self-incrimination, even though he was in custody at the time. He also sought to exclude the results of the Intoxilyzer 5000 breath test, arguing that he was effectively denied the right to obtain an independent test because he was not advised of the test results at the time the test was administered.

In its order granting the motion to suppress, the trial court found that Padidham was in custody when the officer told him that he was too intoxicated to drive and directed him to sit in his (Padidham's) car. The court found that Padidham should have been advised of his *Miranda* rights before the alco-sensor test was administered; because he had not been so advised, the alco-sensor test result was inadmissible. Further, the court concluded that the Intoxilyzer 5000 breath test results were inadmissible because they were not delivered to Padidham immediately upon completion of the test.

1. The state contends that the alco-sensor test result was suppressed in error because Padidham was not in custody when the test was administered. We agree.

"An individual must be advised of his *Miranda* rights, including his right against self-incrimination, only after being taken into custody or otherwise deprived of his freedom of action in any significant way."[2] "[A]lco-sensor and other field sobriety tests given to a person under custodial arrest are inadmissible where . . . administration of the tests has not been preceded by a *Miranda* warning."[3] Although a motorist is deprived of his freedom of action during a traffic stop, such a deprivation does not always trigger the rights set forth in *Miranda*.[4] Instead, "[t]he test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be

---

[1] See OCGA § 40-5-67.1 (b) (2).

[2] *Waters v. State*, 306 Ga. App. 114, 116 (1) (701 SE2d 550) (2010) (citation omitted).

[3] *State v. Norris*, 281 Ga. App. 193, 197 (635 SE2d 810) (2006) (footnote omitted).

[4] *Waters*, supra.

temporary."[5] "[W]hether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous."[6] The trial court's determination that Padidham was in custody prior to taking the alco-sensor test was clearly erroneous.

Padidham was permitted to wait in his own car rather than a police car; he was not handcuffed; and he was told by the officer that he had been stopped for speeding and was going to be given a ticket. The officer told Padidham that he thought he was too intoxicated to drive, but that he was going to verify this suspicion. He did not tell Padidham that he would be arrested. Padidham may not have been free to leave during the eight to ten minutes that elapsed before the alco-sensor test was administered, but not every detention is an arrest.[7]

Under the circumstances presented here, a reasonable person in Padidham's position would conclude that his freedom was only temporarily curtailed and that a final determination of his status was simply delayed.[8] The trial court erred in granting the motion to suppress the alco-sensor test result.[9]

2. The state contends that the trial court erred in suppressing the Intoxilyzer 5000 breath test results. It argues that Georgia law

---

[5] *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (citation and punctuation omitted).

[6] Id. (citation and punctuation omitted.).

[7] Id.

[8] Id.; see *State v. Dixon*, 267 Ga. App. 320, 321 (599 SE2d 284) (2004) (reversing grant of suppression motion where defendant was not handcuffed or placed in the back of a patrol car and was not informed that the officer intended to arrest him, even though the officer may have decided that he intended to arrest the defendant before administering the alco-sensor test); *State v. Pierce*, 266 Ga. App. 233, 234-236 (1) (596 SE2d 725) (2004) (reversing trial court's grant of motion to suppress, holding that defendant was not in custody for *Miranda* purposes where defendant was detained outside of his car while officer summoned another officer from DUI task force, closed defendant's car door, explaining he was doing so "before some other drunk took it off," and left defendant standing near car while he talked to other officer); *State v. Foster*, 255 Ga. App. 704, 706 (566 SE2d 418) (2002) (reversing grant of suppression motion where officer told defendant that if he drove a car from the bar, he would be arrested, but, after defendant drove, officer did not actually arrest him until after he performed field sobriety tests). See also *Owens v. State*, 308 Ga. App. 374, 379-380 (2) (707 SE2d 584) (2011) (trial court did not err in denying motion to suppress where defendant was detained 20 minutes after initial portable breath test to conduct additional test, where second test was to test for accuracy of first test and he was not handcuffed or otherwise restrained while he waited near rear of his car, as a reasonable person could conclude that the detention was temporary); *Waters*, supra (trial court was authorized to find that a reasonable person would believe her freedom was only temporarily curtailed pending further investigation, where officer told her he was calling for officer specializing in DUI investigations to assist in determining her ability to operate her vehicle safely, and she was not placed in handcuffs or in a police car, but directed to stand in front of the patrol car until the other officer arrived). Compare *Norris*, supra at 196 (defendant's detention ripened into a custodial arrest when he was told to turn around and place his hands behind his back, even though he was not expressly told he was under arrest).

[9] See *Pierce*, supra at 236 (1).

requires only that the breath test be completed according to the methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation (GBI) (set forth in Ga. Comp. R. & Regs. r. 92-3-.06),[10] and that the state followed those methods. The state contends further that, contrary to Padidham's assertion and the trial court's ruling, it was not required to immediately give Padidham a copy of the test results for them to be admissible. We agree that the court erred in suppressing the test results.

Inasmuch as the issue raised involves uncontroverted evidence "and no questions of credibility are presented, we will conduct a de novo review of the trial court's application of the law to the undisputed facts."[11]

OCGA § 40-6-392 (a) pertinently provides that upon the trial of an action arising out of acts allegedly committed in violation of OCGA § 40-6-391, evidence of the amount of alcohol in a person's breath shall be admissible.

> Pursuant to [OCGA § 40-6-392 (a) (1) (A)], the Division of Forensic Sciences adopted the following methods for conducting an evidential breath alcohol analysis: (1) The analysis shall be conducted on an Intoxilyzer Model 5000 . . . ; (2) the analysis shall be performed by an individual holding a valid permit, in accordance with Rule 92-3-.02 (2); and (3) the testing instrument shall have been checked periodically for calibration and operation, in accordance with Rule 92-3-.06 (8) (a). Further, "administrative, procedural, and/or clerical steps performed in conducting a test shall not constitute a part of the approved method of analysis." Under OCGA § 50-13-8, we take judicial notice of any rule which has become effective pursuant to the Georgia Administrative Procedure Act, OCGA §§ 50-13-1 through 50-13-23.[12]

Padidham does not argue that the state failed to comply with the rules and regulations set forth by the GBI. Instead, he argues that the state violated a provision of the "Georgia Bureau of Investigation Division of Forensic Sciences Intoxilyzer 5000 Georgia Operator's Training Manual," which he says requires the operator to give the test subject a copy of the test result. He contends that, pursuant to

---

[10] See *State v. Palmaka*, 266 Ga. App. 595, 596-597 (597 SE2d 630) (2004).

[11] Id. (citation omitted).

[12] *State v. Naik*, 259 Ga. App. 603, 604 (577 SE2d 812) (2003) (citing Ga. Comp. R. & Regs. r. 92-3-.06, and *Rowell v. State*, 229 Ga. App. 397, 398 (1) (a) (494 SE2d 5) (1997) (recognizing Rule 92-3-.06 as embodying methods for breath tests approved by the GBI)) (citations and punctuation omitted).

the training manual, he should have been presented with a copy of the breath test results (or at least informed of the results) at the time the test was administered. Notably, Padidham does not claim that he either inquired about the test results or requested an independent test at the time of testing.

In granting the motion to suppress, the trial court expressly determined that the cited training manual required the operator to give a copy of the test results to the subject. Further, the court concluded that, although the training manual did not specify when the results must be given to the test subject, they should have been given to him immediately after they were printed. However, the training manual has not been made a part of the record and cannot be considered on appeal.[13] Moreover, administrative, procedural, and clerical steps performed in conducting a test shall not constitute a part of the approved method of analysis.[14] And, any deviation from the procedure purportedly set out in the training manual would go to the weight rather than the admissibility of the test results.[15] The trial court erred in granting the motion to suppress the results of the Intoxilyzer 5000.

*Judgment reversed. Andrews, J., concurs. McFadden, J., concurs fully and specially.*

McFADDEN, Judge, concurring fully and specially.

I disagree with the majority only as to the sentence supported by footnote 13. The State, as appellant, had the burden to include in the record all of the materials necessary for this court to decide the appeal. If the State had contended that the training manual required something other than what the trial court found, it would have been the State's burden to include the manual in the appellate record. *Thompson v. State*, 248 Ga. App. 74, 75 (544 SE2d 510) (2001). It was not Padidham's burden, as appellee, to show that the trial court summarized it correctly. But as the manual is not necessary to decide the appeal, I otherwise concur fully.

DECIDED JULY 13, 2011 — 

*Rosanna M. Szabo, Solicitor-General, Jeffrey P. Kwiatkowski, Karen M. Seeley, Assistant Solicitors-General*, for appellant.

---

[13] See *Ponce v. State*, 279 Ga. App. 207, 210-211 (2) (630 SE2d 840) (2006).

[14] See *Palmaka*, supra.

[15] Id.

*James K. Sullivan*, for appellee.