## A11A1231. ROWELL v. THE STATE.
(718 SE2d 890)

ADAMS, Judge.

Laura Lee Rowell appeals following her conviction on one count of driving under the influence and one count of weaving/failure to maintain lane. Rowell argues on appeal that the trial court erred in denying her motion to suppress and in overruling her objection to the introduction of the numerical results of her alco-sensor test.

We review a trial court's ruling on a motion to suppress evidence using the "any evidence" standard, "which means

---

that we sustain all of the trial court's findings of fact that are supported by any evidence." Thus, "we construe all evidence presented in favor of the trial court's findings and judgment, accepting the trial court's decision unless it is clearly erroneous.

(Punctuation and footnotes omitted.) *Jupiter v. State*, 308 Ga. App. 386, 387 (1) (707 SE2d 592) (2011).

So viewed, the evidence at the hearing showed that on November 15, 2007, Trooper John Hardage of the Georgia State Patrol was sitting at an intersection in Houston County when he observed Rowell's Ford van traveling at what appeared to be a speed greater than the posted speed limit. He watched the van as it approached a red light at another intersection, slammed on its brakes and skidded past the stop bar. When the van came to a stop it was mostly in the left-hand lane, but partially in the right-hand lane. At that point, Hardage made a left turn and got behind Rowell's van and followed her through the intersection when the light turned green. The trooper activated his blue lights and initiated a traffic stop based upon his concern about Rowell's reaction time at the red light. His concern arose from observing her slamming on her brakes and skidding across the stop bar "basically into the intersection" and over into the next lane. He felt that she was a less safe driver.

Hardage testified that he approached the van and asked Rowell to step out. She could not find her driver's license in response to his request, but she gave him her name and date of birth. While he was talking to Rowell, Hardage noticed an odor of alcoholic beverage. He also observed that her eyes were "somewhat red" and she was a little unsteady while she was standing between her vehicle and the police car. Her speech was "just a little slurred." Hardage asked Rowell if she had had anything to drink, but she said that she had not. Hardage then administered several field sobriety tests. The first test he performed was the horizontal gaze nystagmus (HGN) evaluation, and he testified that he observed six out of six clues in performing that test. Hardage next asked Rowell to perform the one-leg-stand test, and he observed that she was swaying and she could not hold her foot up for more than about three seconds without having to put it down. Rowell attempted the test on three occasions and could not perform it. Hardage did not administer the walk-and-turn test due to wind and limited space, but he did administer the alco-sensor test. Rowell tested positive for alcohol. Hardage further testified, over a defense objection, that the numerical reading on the alco-sensor was 0.208.

Based upon this information, Hardage formed the opinion that Rowell was a less safe driver under the influence of alcohol. Hardage

placed Rowell under arrest for DUI and failure to maintain lane, then handcuffed her and put her in the back of the patrol car. He testified that he read her the implied consent warning after he placed her under arrest.

The trial court issued a letter order denying the motion to suppress after reviewing the evidence from the hearing, the video of the traffic stop, the audio transcript of the administrative license suspension ("ALS") hearing, counsel's argument and case law. The denial of that order was reaffirmed at trial.

1. Rowell first asserts that the trial court erred in denying her motion to suppress the state's chemical test, arguing that Hardage lacked probable cause to arrest her for DUI. In support of her argument, Rowell argues that inconsistencies exist among Hardage's testimony at the motion hearing, his trial testimony and the video-tape of her traffic stop as to when he first detected the odor of alcohol, whether Rowell's speech was slurred, her red eyes, his administration of the field sobriety tests and whether Rowell was unsteady on her feet when she walked back to her car.

But we cannot reach this issue because the record before us is incomplete, as it contains no transcript of the ALS hearing, upon which the trial court specifically relied in denying the motion to suppress. It appears that at the motion hearing, Rowell's counsel proffered Hardage's "sworn testimony" from that ALS hearing, in some form other than a transcript, which he had marked as "D2," but no Exhibit D2 was introduced into evidence. It further appears that Rowell's counsel attempted to introduce a copy of the transcript of the ALS hearing at trial, after marking it as Exhibit "D1," but the trial court excluded the evidence in response to the State's objection. The trial court told Rowell's counsel that he thought he could supplement the record with that transcript, but the appellate record reflects no attempt by Rowell to do so.

Nevertheless, it is apparent that the trial court relied upon a transcript of that evidence at Rowell's request following the motion hearing. Consequently, the record on appeal does not constitute a complete record of the evidence available to the trial court in ruling on the motion to suppress. Rowell, as appellant, had the burden of ensuring that the record was complete. See *Williams v. State*, 287 Ga. App. 361, 362 (2) (651 SE2d 768) (2007).

> An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. When a portion of the evidence bearing upon the issues

> raised by the enumerations of error is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result. [Cit.]

(Citation and punctuation omitted.) *Crawford v. State*, 288 Ga. 425, 427 (2) (704 SE2d 772) (2011). See also *State v. Stelzenmuller*, 285 Ga. App. 348, 351 (1) (646 SE2d 316) (2007) (because trial court excluded the administrative hearing transcript from evidence, this transcript cannot be used to consider trial court's credibility determination). Although on appeal Rowell relies only upon testimony and evidence appearing in the appellate record to support her arguments, this Court has an incomplete picture of the evidence available to the trial court when it decided the motion. "[B]ecause appellant has failed to compile a record that demonstrates all that transpired in the trial court with regard to his suppression motion, we must presume that the evidence before the court supported its decision to deny the motion." *Crawford*, 288 Ga. at 427 (2). Thus, we must assume that the trial court properly resolved any inconsistencies between Hardage's testimony at the various hearings and the videotape.

2. Nevertheless, Rowell also raises certain issues based primarily upon the videotape of the traffic stop that can be resolved based upon the existing appellate record.

(a) Rowell takes issue with Hardage's administration of the HGN and the one-leg-stand tests as shown on the videotape of the traffic stop. We find no error. With regard to the HGN test, Rowell asserts that "[t]he distance the stimuli is from the face and height above the eyes, the timing of each pass of each eye by the stimulus, clues of 'equal tracking' being looked for by the Officer, instead of the three recognized clues, all indicate a flawed and butchered performance not worthy of belief." But "[a]bsent a fundamental error, such as one affecting the subject's qualification for the HGN test, evidence of the possibility of error goes only to the weight of the test results, not to their admissibility." (Punctuation and footnote omitted.) *Parker v. State*, 307 Ga. App. 61, 64 (2) (704 SE2d 438) (2010). See also *Duncan v. State*, 305 Ga. App. 268, 272 (2) (a) (699 SE2d 341) (2010); *State v. Tousley*, 271 Ga. App. 874, 881 (1) (c) (611 SE2d 139) (2005). Rowell's conclusory argument regarding the HGN test does not support the exclusion of the test results. She makes no attempt to show that the flaws she alleges in the administration of the HGN test go to anything other than the weight to be accorded the results. Similarly, Rowell's arguments concerning the proper administration of the one-leg-stand test when she was in high heels goes to the weight of the evidence and not to its admissibility. See

*Stewart v. State*, 280 Ga. App. 366, 368-369 (2) (634 SE2d 141) (2006). Thus, the trial court was entitled to consider the results of these tests in ruling upon the motion to suppress.

(b) Rowell also raises several arguments regarding the administration of the alco-sensor test, asserting that she was improperly coerced into taking the test without the benefit of a *Miranda* warning.

> Alco-sensor and other field sobriety tests given to a person under custodial arrest are inadmissible where administration of the tests has not been preceded by a *Miranda* warning. Although a motorist is deprived of his freedom of action during a traffic stop, such a deprivation does not always trigger the rights set forth in *Miranda*. Instead, the test for determining whether a person is "in custody" at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary. Whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.

(Footnotes omitted.) *State v. Padidham*, 310 Ga. App. 839, 840-841 (1) (714 SE2d 657) (2011). Moreover, although "under Georgia law, an investigating officer is not required to advise a suspect that his performance of field sobriety tests is voluntary,"[1] an officer cannot improperly compel a suspect into submitting to the tests. See generally *Aldrich v. State*, 220 Ga. 132, 134 (137 SE2d 463) (1964). This Court, in fact, specifically looks for an absence of any threat of criminal sanction or any show of force in determining whether field sobriety test evidence is admissible. See *Montgomery v. State*, 174 Ga. App. 95, 96 (1) (329 SE2d 166) (1985) (test results admissible where defendant not threatened with criminal sanctions for his failure to perform the tests, was not physically forced to do tests, and no showing of force tantamount to actual use of force, and defendant did not refuse to perform tests). See also *Clark v. State*, 289 Ga. App. 884, 885-886 (2) (658 SE2d 372) (2008) (same).

Here, Rowell argues that Hardage's actions in administering the test constituted improper coercion and/or transformed her detention into a custodial situation for purposes of *Miranda*. Hardage administered the alco-sensor test after he determined that Rowell had failed the HGN and the one-leg-stand tests. The videotape reflects that as Rowell blew into the alco-sensor device, Hardage urged her

---

[1] (Footnote omitted.) *Bramlett v. State*, 302 Ga. App. 527, 530 (691 SE2d 333) (2010).

repeatedly to "blow, blow, blow." But her initial attempts failed to achieve a useable reading, and Hardage told her on two occasions that he would take her to jail if she did not properly blow into the device. At trial, Hardage testified that Rowell was not performing the test as instructed, and he was intending to inform her that if she did not perform it correctly, he would take her to jail to perform the state-administered chemical test.

From our review of the videotape, we conclude the trial court could have properly interpreted Hardage's repeated commands to "blow, blow, blow" as instructing her as to the length of her breath and not as an attempt to force her to submit to the test. But Hardage's statements that he would take Rowell to jail if she did not properly perform the test are more troubling.

In *Leiske v. State*, 255 Ga. App. 615 (565 SE2d 925) (2002), the defendant argued that the results of his state-administered chemical test were not admissible because his consent was not voluntary based upon the officer's indication that he would be jailed if he did not submit to the tests. Although Leiske did not contest the results of his field sobriety tests, the opinion is instructive. At the hearing on Leiske's motion to suppress, his counsel attempted to elicit testimony from the arresting officer that he told Leiske he would take him to jail if he did not perform the field sobriety tests. The arresting officer testified, however, that he told Leiske that if he refused the field sobriety tests, he would be forced to read him the implied consent notice, and if he refused that, his license would be suspended, he would be arrested and he would be taken to jail. The officer explained that he simply gave Leiske the options provided him by law. This Court determined that "[t]his colloquy does not establish that [the defendant] was 'coerced' into agreeing to *any* test," presumably including the field sobriety tests. (Citation omitted; emphasis supplied.) Id. at 616-617 (2). Although Hardage may have similarly intended to inform Rowell of her options under the law, that is not what he did. Rather, he simply told her that he would take her to jail if she did not perform the test properly. Thus it is possible to interpret Hardage's statements as a threat of criminal sanction for failing to properly perform the test.

Nevertheless, we do not believe that Hardage was required to read Rowell a *Miranda* warning under the circumstances of this case. This Court has previously held that where a police officer indicates that a defendant is going to jail regardless of his performance on the field sobriety tests, an officer must read the *Miranda* warning. See *Hale v. State*, 310 Ga. App. 363, 366 (1) (714 SE2d 19) (2011) (defendant in custody for purposes of *Miranda* when officer told him he was going to jail before administering alco-sensor test); *State v. Norris*, 281 Ga. App. 193, 196 (635 SE2d 810) (2006)

(defendant's detention ripened into an arrest when officer told him to turn around and place his hands behind his back, requiring a *Miranda* warning before administration of alco-sensor test); *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) (field sobriety test results excluded in absence of *Miranda* warning where defendant informed that she was going to jail *whether or not* she submitted to the tests). But in this case Hardage gave Rowell an option of sorts: perform the test properly or go to jail. Thus a reasonable person in Rowell's position would have believed that she was not yet under arrest and that her detention still could be only temporary. Moreover, Hardage did not make these statements until Rowell had already consented to and begun performing the test. There was no indication that her initial consent was made under any threat of force or criminal sanction or that she wanted to refuse the test. It was only when she failed to achieve a useable reading that Hardage indicated that he would take her to jail if she did not perform the test correctly. Under these circumstances, no *Miranda* warning was required and Hardage's statements cannot be interpreted as coercing her into submitting to the test.

But even if Hardage's statements could be construed as improperly coercing Rowell into continuing to perform the test, we find that the admission of the test results was harmless error because sufficient evidence existed to establish probable cause for Rowell's arrest without that evidence. The officer had already observed her abrupt stop at the traffic light, which led her to cross the traffic bar and veer into another lane. After the traffic stop, he smelled the odor of alcohol and observed that she was unsteady on her feet, that her eyes were red and that her speech was somewhat slurred. These factors along with her performance on the two other field sobriety tests were sufficient to give Hardage "knowledge or reasonably trustworthy information sufficient to authorize a prudent person to believe that the suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely." (Citation omitted.) *Cash v. State*, 299 Ga. App. 303, 305 (2) (682 SE2d 607) (2009). Thus, under the totality of the circumstances, the trial court was authorized to conclude that the officer had probable cause to arrest Rowell for driving under the influence of alcohol. Id.; *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996) (even in the absence of the field sobriety tests, the officer's observation of bloodshot, watery eyes and odor of alcohol was sufficient to show probable cause to arrest appellant for driving under the influence). Cf. *Trotter v. State*, 256 Ga. App. 330, 332 (2) (568 SE2d 571) (2002) (improperly admitted breath test results harmless where evidence merely cumulative of other evi-

dence of driver's less safe state).[2]

3. Rowell next asserts that the result of the state's chemical test should have been excluded because although Hardage testified that he read her the implied consent notice, the videotape does not reflect that he, in fact, read the notice to her.

> OCGA § 40-6-392 (a) (4) provides, in part, that the arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section. . . . [This statute requires] exclusion of the results of a State-administered chemical test where the notice was not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.

*Thomas v. State*, 294 Ga. App. 108, 111 (2) (668 SE2d 540) (2008). But Rowell failed to raise this argument below. In fact, the prosecutor's first question for Hardage after the videotape was played at trial referenced the reading of the implied consent notice and Rowell's consent to the state test, with no objection from her counsel. Thus, Rowell waived this issue for appeal. See *Black v. State*, 248 Ga. App. 626 (1) (548 SE2d 9) (2001).

Even if the issue were properly preserved, however, we would find no error. Hardage testified that he read Rowell the implied consent notice. Although the videotape in the appellate record does not reflect the reading of the notice, the sound quality on portions of the tape is poor, often cutting in and out. The videotape contains at least two gaps in sound after Rowell's arrest when both Hardage and Rowell are offscreen. These gaps are of sufficient duration to have allowed Hardage to read her the implied consent notice. Moreover, the end of the tape captured a portion of conversation in which Rowell asks what will happen next, and Hardage replies that it will depend upon the results of later testing, which indicates that he had already informed her of the test. Thus, the evidence supported a finding that Hardage read Rowell the implied consent warning.

4. Rowell also contends that the trial court erred in overruling her objection to Hardage's testimony regarding the numerical reading shown on the alco-sensor.

---

[2] We note that some of our sister states have applied a somewhat different analysis to reach the same result. Those states have held that an officer's action in advising a person that he would be arrested if he refuses to submit to field sobriety tests is not improperly coercive if the officer had probable cause to arrest the person for DUI. See *City of Columbus v. Bickis*, 2010 WL 2706257, 7 (B) (Ohio App. 10 Dist. 2010); *State v. Marks*, 644 NW2d 35, 37 (Iowa App. 2002); *State v. Medenbach*, 48 Or. App. 133 (616 P2d 543) (1980).

At the hearing on the motion to suppress, the trial court allowed Hardage to testify over Rowell's objection to the numerical reading on the alco-sensor device. The trial judge stated that he would allow the testimony in "and we'll deal with it. You know, we will not let it go to the jury." It is well established that "alco-sensor results are not used as evidence of the amount of alcohol or drug in a person's blood. Instead, the alco-sensor is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol." (Citations and punctuation omitted.) *Keenan v. State*, 263 Ga. 569, 571 (2) (436 SE2d 475) (1993). Thus, this Court has held that such information is not admissible even for considering probable cause. *State v. Holler*, 224 Ga. App. 66 (479 SE2d 780) (1996). But see *State v. Rish*, 295 Ga. App. 815, 817 (673 SE2d 259) (2009) (citing numerical alco-sensor reading in reversing the grant of defendant's motion to suppress).

But even if the trial court erred in admitting this evidence, Rowell has failed to show harm. "[A] reversal is not warranted simply because the judge heard . . . allegedly inadmissible evidence. When the judge sits as the trier of fact, it is presumed that he will consider only legally admissible evidence." (Citation and punctuation omitted.) *Poole v. State*, 270 Ga. App. 432, 435 (2) (606 SE2d 878) (2004). "[I]t is presumed that the judge, as the trier of fact, is able to distinguish between competent and incompetent evidence and consider only that evidence which is admissible." (Citation omitted.) *Hopkins v. State*, 209 Ga. App. 337, 339 (3) (433 SE2d 423) (1993). Here the trial judge stated only that he would "deal" with the evidence. His letter order indicates only that Hardage "conducted three field sobriety tests" and does not cite the numerical alco-sensor reading as a basis for denying the motion to suppress. Accordingly, nothing exists in the record to overcome the presumption that the trial judge properly disregarded the numerical alco-sensor evidence. In any event, we have previously found that probable cause existed even without the alco-sensor evidence, and thus this contention affords no basis for reversal.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED NOVEMBER 15, 2011.

*Gregory W. Holt*, for appellant.
*Alan R. Tawse, Jr.*, Solicitor-General, *Arthur J. Creque*, Assistant Solicitor-General, for appellee.