**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 14, 2018**

# In the Court of Appeals of Georgia

A18A0642. YEONG SIK OH v. THE STATE.

BETHEL, Judge.

Yeong Sik Oh appeals from his conviction on one count of driving under the influence of alcohol. He argues that the trial court erred by denying his motion to suppress evidence from a traffic stop because the officer conducting the stop did not advise him of his *Miranda* rights before he made incriminating statements and submitted to a portable breathalyzer test, because his arrest was made without probable cause, and because the officer failed to obtain his consent to perform an alcohol breath test following his arrest. For the reasons set forth below, we find no error in the trial court's denial of Oh's motion to suppress and affirm his conviction.

On appeal from a ruling on a motion to suppress, we defer to the trial court's factual findings and credibility determinations, but review de novo the court's application of the law to the undisputed facts. And significantly, to the extent that the controlling facts are undisputed because they are plainly discernable from the patrol car-mounted video recording as they are in this case, we review those facts de novo. Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts. This includes legal determinations based upon the totality of the circumstances.

*State v. Depol*, 336 Ga. App. 191, 191-92 (784 SE2d 51) (2016) (citations and punctuation omitted).

In this case, the evidence presented at the suppression hearing, including video and audio recorded from a police car patrol camera, showed that in the early morning hours of December 31, 2015, Oh was driving his vehicle when he was stopped by a police officer who had noticed that a brake light was malfunctioning. The officer followed Oh's vehicle for a short distance and then initiated his blue lights, which prompted Oh to pull his vehicle into a nearby parking lot. The officer had not observed any evidence of impairment at that point, and other than the failing brake light had not observed any other traffic violations.

2

The officer approached the driver's side of the vehicle and began speaking with Oh. During that conversation, the officer told Oh that he smelled burned marijuana coming from the vehicle. Oh replied that he had smoked marijuana in the vehicle a few days before. The officer asked Oh to exit his vehicle and had him stand behind the car until a backup officer arrived. At that point, the officer planned to search the car based on the marijuana he had smelled. In response to a question from the officer, Oh denied that he had consumed alcohol that evening.

Later, while Oh was standing outside the vehicle, the officer smelled alcohol on Oh's breath. Oh again denied that he had been drinking but then admitted to the officer that he had consumed one beer about an hour earlier in the evening with a meal. At that time, the officer also observed that Oh's eyes were red and watery.

The officer commenced a DUI investigation of Oh. The officer explained each of the evaluations he was going to ask Oh to participate in and asked if Oh had any physical or medical conditions that would prevent him from participating. Oh indicated that he was able to participate and did not mention any physical concerns.

The officer had Oh perform a battery of standardized field sobriety tests, beginning with a horizontal gaze nystagmus (HGN) test. The officer observed six out of six clues on the HGN test, consistent with conditions of impairment. The officer

3

then instructed Oh to take a test in which he was instructed to take nine steps with his arms to his side and then turn around (the "walk and turn"). The officer demonstrated the actions he was asking Oh to perform before instructing Oh to proceed. The officer noted that Oh took ten steps instead of nine, failed to keep his balance during the instructional phase of the test, made an improper turn, and had to use his arms to maintain his balance. The officer testified that observing two or more of these clues during a walk and turn indicates impairment. The officer then asked Oh to stand on one leg, which he demonstrated for Oh. Oh performed this test without signaling any clues of impairment.

Based on the preliminary sobriety tests, the officer told Oh that he believed he was impaired due to alcohol consumption and offered him a portable breath test (PBT). The officer then accused Oh of lying about the amount of alcohol he had consumed that evening, asking him whether he had in fact consumed more alcohol than he initially claimed. Oh initially denied that he had lied to the officer or consumed more alcohol than he claimed, but he later admitted that he had consumed four beers earlier in the evening. After some discussion, Oh blew into the PBT, which generated, according the officer, a "really high number." The officer testified that he did not believe the test was accurate because "[i]t was an absurd number, like alcohol-

poisoning kind of number." Based on his belief that the initial test was not consistent with his observations of Oh, the officer asked Oh to blow into the device a second time, which yielded a positive test for alcohol. The officer later testified that Oh's behavior and responses to the field sobriety tests were more consistent with consumption of four beers than a single beer.

Based on these observations, the officer placed Oh under arrest. The officer then read the Georgia Implied Consent Notice for Subjects Age 21 and Over to Oh and asked whether he consented to a breath test. Oh asked several questions about the warning and asked the officer to read it again, which prompted the officer to again read the consent warning to Oh and ask if he would submit to a breath test. The officer also accused Oh of stalling. Several minutes later, after asking additional questions, Oh provided his consent for the breath test. Oh submitted to the breath test at police headquarters, the results of which were consistent with the evidence of impairment the officer had observed during the traffic stop. Oh did not request an additional test. The officer described his encounter with Oh as "pleasant" and noted that he had not had to raise his voice with Oh during the stop. The officer also testified that he never told Oh that he had to take the breath test. His testimony was consistent with the conversation recorded by the dashboard camera.

5

Oh was charged with one count of DUI less safe[1] and one count of DUI per se (driving with unlawful alcohol concentration).[2] Oh moved to suppress all evidence from the traffic stop, claiming violations of his Fourth, Fifth, and Sixth Amendment rights. The trial court denied Oh's motion. Following a bench trial, Oh was acquitted of the DUI less safe charge but was convicted of DUI per se. This appeal followed.

1. Oh first argues that he was in custody when he provided breath samples into the PBT and admitted to consuming four beers. He argues that because he had not received a *Miranda* warning from the officer before providing the breath samples or making those statements, that evidence should be suppressed. We disagree.

> An individual must be advised of his *Miranda* rights, including his right against self-incrimination, only after being taken into custody or otherwise deprived of his freedom of action in any significant way. Alco-sensor and other field sobriety tests given to a person under custodial arrest are inadmissible where administration of the tests has not been preceded by a *Miranda* warning. Although a motorist is deprived of his freedom of action during a traffic stop, such a deprivation does not always trigger the rights set forth in *Miranda*. Instead, the test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-391 (a) (5).

thought the detention would not be temporary. Whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.

*State v. Padidham*, 310 Ga. App. 839, 840-41 (1) (714 SE2d 657) (2011) (citations and punctuation omitted).

In *Padidham*, the suspect had been stopped for speeding. *Id*. at 839. He submitted to several field sobriety tests, which prompted the officer to call for a backup officer to bring an alco-sensor to the scene. *Id*. While waiting for the officer to arrive, the suspect was permitted to return to his own car. *Id*. The officer told him that he had stopped him for speeding, that he was going to receive a ticket, and that he thought that the suspect was too intoxicated to drive, which he was going to verify. *Id*. The officer administered the test eight to ten minutes later, which showed the presence of alcohol. *Id*. This Court reversed the trial court's grant of the suspect's motion to suppress, finding that he was not in custody at the time he provided the breath samples. *Id*. at 841 (1). In so doing, we noted that the officer had not told the suspect that he would be arrested as he awaited the backup officer and the alco-sensor. *Id*.

As the trial court noted, the facts of this case closely mirror those in *Padidham*.

7

The officer indicated to Oh that he believed that he was impaired before administering the PBT. This is similar to the statement in *Padidham* in which the officer indicated that he was going to verify his belief that the driver was too intoxicated to drive.

Critically, as in *Padidham*, the officer also never indicated to Oh that he would be under arrest regardless of the outcome of the test or whether he agreed to submit to the test at all. Before agreeing to the test, Oh asked the officer whether he would be "locked up" if he refused to blow into the PBT. The officer did not answer the question directly, but instead noted his belief that what he had seen to that point led him to believe that Oh was impaired by alcohol. This is essentially a restatement of the officer's earlier statement as to why he was asking Oh to take the test. Moreover, in a prolonged discussion before administering the test, the officer went on to emphasize that the PBT is used to rule out drug use and medical conditions as sources of intoxication and to see if his observations of Oh's behavior to that point were consistent with impairment due to alcohol consumption. We find nothing in those statements that would have given Oh the impression at time that his detention was more than temporary.

8

Accordingly, the trial court's determination that Oh was not in custody at the time he took the PBT and told the officer he had consumed four beers that evening was not clearly erroneous. Consequently, no *Miranda* warning was required.

2. Oh next argues that the trial court erred in denying his motion to suppress because the officer lacked probable cause to place Oh under arrest. Oh principally relies upon this Court's decision in *State v. Batty*[3] to argue a lack of evidence supporting probable cause to arrest Oh. We disagree.

In *Batty*, the officer initiated a traffic stop after noticing the defendant making an illegal turn and then following a vehicle too closely. 259 Ga. App. at 431. The officer noted the smell of alcohol coming from the vehicle, and the defendant thereafter admitted to having "a couple of beers." *Id*. An alco-sensor test showed a positive result for the presence of alcohol, prompting the officer to administer several field sobriety tests, all of which the defendant passed. *Id*. The officer nonetheless placed the defendant in custody for DUI less safe, and the defendant submitted to a state-administered alcohol breath test while in custody. *Id*. This Court upheld the trial court's grant of the defendant's motion to suppress, noting that the officer never

---

[3] 259 Ga. App. 431 (577 SE2d 98) (2003).

articulated any facts supporting a belief that the defendant was a less safe driver due to the presence of alcohol. *Id*.

This case is plainly distinguishable from *Batty* on a number of fronts. First, according to the officer's testimony, the officer noted Oh's red and watery eyes and the smell of alcohol on his breath, and two of the initial tests administered by the officer yielded evidence of impairment as did Oh's second blow into the PBT. Each of these items supported an inference that Oh was impaired.

In this case, the officer indicated that he arrested Oh for "driving under the influence" and noted the results of the field sobriety tests he had conducted led him to believe that he was a less-safe driver. The standards for probable cause a DUI per se arrest are different from those for a DUI less safe arrest, but in this case the evidence presented at the suppression hearing established that the officer had probable cause to arrest Oh for both offenses.

An individual is guilty of DUI-less safe where he or she operates a motor vehicle while "[u]nder the influence of alcohol to the extent that it is less safe for the person to drive." OCGA § 40-6-391 (a) (1). As this Court discussed in *State v. Rish*,[4] if the evidence shows only that a driver is intoxicated and does not show that his

---

[4] 295 Ga. App. 815, 816 (673 SE2d 259) (2009).

10

consumption of alcohol has impaired his ability to drive, there is no probable cause to arrest for DUI-less safe. "Impaired driving ability depends solely upon an individual's response to alcohol. Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver." *Rish*, 295 Ga. App. at 816-17 (citation omitted). However,

> a conviction under OCGA § 40–6–391 (a) (1) does not require proof that a person actually committed an unsafe act while driving; it only requires sufficient evidence to authorize a finding, beyond a reasonable doubt, that the defendant was operating or in actual physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe for him to drive. Circumstantial evidence may be sufficient to meet this burden of proof.

*Bennett v. State*, 313 Ga. App. 465, 466 (722 SE2d 94) (2011) (citation omitted).

In *Bennett*, this Court held that the State presented sufficient evidence to support a DUI less-safe conviction where the officer testified that, during the traffic stop, he noticed the smell of alcohol on the suspect's breath, that his speech was slurred, and that his eyes were bloodshot. *Id*. at 465-66. Additionally, the defendant admitted to drinking earlier in the evening and failed an HGN test. *Id*. He also submitted to an alcosensor test which registered positive for the presence of alcohol.

11

*Id*. Importantly, in *Bennett*, the stop occurred at a police roadblock. *Id*. The officer had not observed the suspect driving unsafely, and he had not driven at an unsafe speed or made an attempt to evade the roadblock. *Id*. at 466. Nevertheless, this Court affirmed his conviction for DUI less-safe, noting that the officer could, based on his training and experience, give opinion testimony as to the defendant's sobriety and whether he was under the influence of alcohol to the extent that he was less safe to drive. *Id*. *See also Tanner v. State*, 225 Ga. App. 702, 702-03 (484 SE2d 766) (1997).

> In contrast,

> a conviction for DUI-per se does not require proof that it was less safe for the defendant to drive. Rather, an individual is guilty of DUI-per se where, within three hours after driving a motor vehicle, tests show that his blood alcohol concentration is 0.08 grams or more. OCGA § 40-6-391 (a) (5). Thus, probable cause to arrest for DUI-per se exists where an officer has a reasonable basis to believe that: (1) the suspect has, within the previous three hours, been in physical control of a moving vehicle; and (2) the suspect's current blood alcohol concentration is greater than 0.08 grams.

*Rish*, 295 Ga. App. at 817 (citations omitted).

In this case, as in *Bennett*, Oh admitted to consuming alcohol earlier in the evening, and two field tests showed clues of impairment. The PBT showed the

12

presence of alcohol and was "consistent" with the result the officer suspected based on the two earlier field sobriety tests that Oh had failed. Because of the reading on the PBT and the physical manifestations of impairment the officer observed when Oh submitted to the various field sobriety tests, the officer had probable cause to arrest Oh for DUI less-safe.

Moreover, although the specific reading on the PBT was not admitted into evidence at the suppression hearing, the officer's characterization of the reading on the test, in conjunction with the other evidence in the record, established a reasonable probability that, at that time, Oh was in violation of OCGA § 40-6-391 (a) (5) and gave the officer probable cause to place him under arrest for DUI per se. *See Rish*, 295 Ga. App. at 817-18. Oh's enumeration therefore fails.

3. Finally, Oh argues that the results of Oh's state-administered chemical breath test, taken at police headquarters following his arrest, should have been suppressed because the State did not obtain Oh's actual consent for the test. We disagree.

At the time the trial court considered Oh's motion to suppress (and at the time Oh filed his notice of appeal in this case), the Supreme Court had not yet issued its

13

decision in *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017).[5] In *Olevik*, the

Supreme Court determined that a breath test provided by a DUI suspect after having

been read the age-appropriate Georgia implied consent warning was not subject to

analysis under the Fourth Amendment but was rather subject to a self-incrimination

analysis under the Fifth Amendment and Article I, Section I, Paragraph XVI of the

Georgia Constitution. *Id*. at 232-46 (2). Under that provision of the Georgia

Constitution, a suspect in these circumstances is protected from compelled acts of self

incrimination, which includes protection against being compelled to submit to a

breath test given after receiving the implied consent warning. *Id*. Thus, a defendant

has a constitutional right to refuse such testing. *Id*. at 246 (2).

> As the Supreme Court went on to discuss on *Olevik*,

> whether a defendant is compelled to provide self-incriminating evidence
> in violation of Paragraph XVI is determined under the totality of the
> circumstances. Determining the voluntariness of (or lack of compulsion
> surrounding) a defendant's incriminating statement or act involves
> considerations similar to those employed in determining whether a
> defendant voluntarily consented to a search. We have said that the
> voluntariness of a consent to search is determined by such factors as the

---

[5] The trial court's order denying Oh's motion to suppress was issued on March 17, 2017. Oh's notice of appeal was filed on May 11, 2017. *Olevik* was issued by the Supreme Court on October 16, 2017.

age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling. Just as the voluntariness of consent to search includes an assessment of the psychological impact of all the factors on a defendant, a significant factor in a due process inquiry is whether a deceptive police practice caused a defendant to confess or provide an incriminating statement. And although knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.

*Olevik*, 302 Ga. at 251-52 (3) (b).

Critical to the matter before us, the Supreme Court also noted that "the relevant factors [used] to determine the voluntariness to consent to search, are [the same factors] used in determining whether an incriminating act or statement was voluntary." *Id*. at 252 (3) (b). Thus, even though the trial court in *Olevik* had analyzed the suspect's alleged consent to a breath test under a Fourth Amendment voluntariness of consent to search standard, the same factors were to be applied in determining whether an incriminating act was made voluntarily. *Id*. Thus, in this case, although the presentation of evidence by the State and Oh (and the trial court's

15

consideration of it) was made under the Fourth Amendment rubric announced by the Supreme Court in *Williams v. State*, 296 Ga. 817 (771 SE2d 373) (2015), we are not precluded from reviewing the trial court's determinations as to the voluntariness of Oh's act of submitting to the breath test because the trial court would have applied the same factors in its analysis had it been aware that challenges to the breath test are properly considered under *Olevik* rather than *Williams*.

We turn, then, to a de novo review of the trial court's determination that Oh's act of submitting to the breath test was voluntary. *Depol*, 336 Ga. App. at 192. In this case, Oh suggests he was confused by the language of the implied consent warning, noting that he asked the officer to read it multiple times. He also noted that the officer became frustrated with him and that the officer "emphatically and sternly told [Oh] that he was stalling." Oh argues that the officer's statements pressured him to supply a yes or no answer to the officer's question as to whether he would consent to testing. Oh contends that his questions and failure to provide a direct response should have been construed as a refusal to consent. Oh also argues that the presence of a backup officer intimidated him during the time he was determining how to respond to the consent warning.

16

Under the factors set forth in *Olevik*, we disagree with Oh that the facts surrounding his response to the consent warning indicate his consent to testing was not voluntarily given. Oh was 24 years old when this incident occurred, and the officer observed that, in light of the roadside conversation he had with Oh that evening, Oh appeared to be a person of at least average intelligence. The traffic stop lasted just under 40 minutes, which in light of the number of tasks performed by the officer, did not appear to be unreasonable or needlessly extended at any point. Oh was never physically punished or threatened with violence, and we agree with the trial court's observation that nothing in the record, including our review of the dashcam video of the stop, supports an inference that Oh suffered any sort of negative psychological impact as a consequence of the DUI stop and the officer's on-site investigation, including any influence the presence of backup officers may have had on his decision-making.

Moreover, despite Oh's argument to the contrary, the officer made no effort to deceive Oh into consenting to the test and, in fact, went to some length to clarify Oh's choice in the matter, including reading the consent warning to him twice. The officer clarified that the warning called for a "yes or no" answer to the "will you submit" question. The video of the incident also indicates that the officer did not raise his

voice to Oh, remaining calm and professional with Oh throughout their discussion regarding Oh's response to the consent warning. Moreover, although Oh's questions are consistent with his claim on appeal that he did not initially understand the consent warning, his later consent to testing after the officer's repeated reading of the warning and truthful answers to Oh's questions leads us to reject this argument. The choice before Oh may have been an unpleasant one, but the record does not support an inference that he did not understand what he was being asked to decide or that he was pressured into consenting to the test.

Therefore, in light of the totality of the factors considered above, we agree with the trial court that Oh's consent to the breath test following the implied consent warning was voluntarily given. *See State v. Council*, 343 Ga. App. 583, 586 (807 SE2d 504) (2017) (consent given voluntarily when, among other factors, officer read consent warning multiple times, patiently and calmly answered suspect's questions, and suspect appeared to understand and respond to questions). The trial court did not err in denying Oh's motion to suppress. Accordingly, we affirm his conviction.

*Judgment affirmed. Ellington, P. J., and Senior Appellate Judge Herbert E. Phipps, concur*.