## A07A0543. McDEVITT v. THE STATE.

(648 SE2d 481)

PHIPPS, Judge.

Lester McDevitt was tried by a jury and convicted of driving under the influence of alcohol to the extent it was less safe for him to drive and driving without a license. He was also charged with and pled nolo contendere to failure to maintain lane, speeding, and driving left of the centerline. The state nolle prossed a second speeding charge. On appeal, McDevitt claims that the trial court erred by denying his motion to suppress the results of field sobriety tests and that the evidence was insufficient to support his conviction for driving under the influence of alcohol. We find no merit in McDevitt's claims and affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous.[1] The reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment and must not disturb the trial court's ruling if there is any evidence to support it.[2] "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial."[3]

The record shows that Officer J. B. Whelchel with the DeKalb County Police Department was on patrol on September 24, 2005, at approximately 3:30 a.m., and saw McDevitt's car traveling at a high rate of speed. Whelchel determined that McDevitt was traveling at 70 mph in a residential area. After following McDevitt, Whelchel observed McDevitt's car cross the double yellow centerlines and drive on the opposite side of the road and then saw him drift in and out of his lane. At that point, Whelchel activated his blue lights and effected a traffic stop.

When Whelchel asked him why he was speeding, McDevitt responded that he was coming from work and that he was trying to get home. Whelchel noticed a strong odor of alcohol coming from the vehicle, which was occupied only by McDevitt. When McDevitt got out of his car, Whelchel noticed that his face was red, his eyes were bloodshot and watery, and he seemed unsteady. Whelchel asked McDevitt how much alcohol he had consumed, and McDevitt said none. When McDevitt walked to the rear of his vehicle, Whelchel noticed that the alcohol odor was coming from McDevitt. Whelchel

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[2] Id.

[3] *Whitehead v. State*, 258 Ga. App. 271, 273 (1) (574 SE2d 351) (2002) (citation omitted).

testified that McDevitt's speech was slurred at times and that he seemed to have difficulty focusing on what he was saying. Whelchel asked McDevitt to recite a portion of the alphabet, beginning at D and ending at X. McDevitt attempted unsuccessfully to do so, and stated that he just wanted to go home.

Whelchel then asked if he would perform field sobriety evaluations to determine if he was able to drive safely. McDevitt agreed. Whelchel initially performed the horizontal gaze nystagmus (HGN) test, during which he asked McDevitt to follow a light with his eyes. A total of six clues can be observed during this test. Four clues indicate impairment. Whelchel observed six clues during McDevitt's test. Whelchel also had McDevitt attempt the walk and turn evaluation and the one-leg stand. The results of those tests also indicated that McDevitt was impaired. At the conclusion of those tests, Whelchel asked McDevitt if he had taken any drugs or medications of any kind, including anything prescribed by a doctor. McDevitt asked if he had to disclose that information, and Whelchel said that he did not. Finally, Whelchel asked McDevitt to blow into a portable breath test. McDevitt refused.

At that point, Whelchel informed McDevitt that he was under arrest and placed him in handcuffs. He then read the implied consent notice for the state breath test. When asked if he would submit to the state-administered chemical test of his breath, McDevitt replied, "not at this time." Whelchel drove McDevitt to the sheriff's office and gave him an opportunity to take a breath test, but McDevitt declined.

Whelchel testified that his car was equipped with a camera, that he had reviewed the recording for September 24, and that it accurately depicted the events preceding and including McDevitt's arrest. The recording was played for the court during the motion to suppress hearing and for the jury at trial. Based on his training and his observations of McDevitt's driving, appearance, and performance on the field sobriety tests, as well as the strong odor of alcohol, Whelchel formed an opinion that McDevitt "was a less-safe driver that night, due to the consumption of alcohol or, possibly, drugs; or a combination thereof."

1. McDevitt claims that the trial court erred by denying his motion to suppress the results of the field sobriety tests because he was in custody at the time the tests were given and had not been advised of his *Miranda* rights. He argues that he was in custody before the field sobriety tests were given because Whelchel was angry with him at the beginning of the encounter and because Whelchel ignored his requests to be allowed to go home.

"[U]nder Georgia law[,] *Miranda* warnings must precede a request to perform a field sobriety test only when the suspect is 'in

custody.' "[4] "The test for determining whether a person is in custody at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary."[5] In applying this test, we must consider all of the surrounding circumstances.[6]

Upon stopping McDevitt, Whelchel expressed frustration at McDevitt's excessive speed by asking what justified his driving at 70 mph in a residential area. McDevitt responded that he was just trying to get home. Whelchel then smelled a strong odor of alcohol and noticed that McDevitt's face was red, his eyes were bloodshot and watery, and he was unsteady on his feet. After McDevitt failed to recite the alphabet, he stated that he just wanted to go home. Whelchel then asked McDevitt if he would take field sobriety tests to determine if he could drive safely, and McDevitt agreed.

Whelchel did not make any statement or take any overt act that would cause a reasonable person to believe that he was not merely temporarily detained during an investigation.[7] Nor did the fact that Whelchel did not let McDevitt drive home without determining whether it was safe for him to do so place McDevitt "in custody" for *Miranda* purposes here.[8] Thus, the trial court's conclusion on this issue was not clearly erroneous.[9]

2. McDevitt claims that the trial court erred by denying his motion to suppress because Whelchel impermissibly coerced him into submitting to field sobriety tests. He argues that his consent to submit to the tests was not valid because Whelchel intimidated him and failed to tell him that the tests were voluntary.

Whelchel testified, and the recording shows, that his initial frustration with McDevitt for his excessive speeding subsided quickly. Whelchel never told McDevitt that he was required to submit to any of the field sobriety tests, but instead politely asked him to perform them and then explained how they were to be performed. Specifically, he asked McDevitt if he would mind reciting the alphabet from the letter "D" to the letter "X." Before beginning the other tests, he asked McDevitt if he thought he would be capable of performing a couple of field sobriety evaluations so he could determine if it was safe for

---

[4] *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) (citation omitted).

[5] *Loden v. State*, 271 Ga. App. 632, 633 (610 SE2d 593) (2005) (citation omitted); *Price*, supra.

[6] *State v. Pierce*, 266 Ga. App. 233, 235 (1) (596 SE2d 725) (2004).

[7] See id. at 235-236.

[8] See *Smith v. State*, 236 Ga. App. 548, 550-551 (2) (512 SE2d 19) (1999), rev'd on other grounds, 272 Ga. 83 (526 SE2d 59) (2000).

[9] See *Loden*, supra (whether person is in custody for *Miranda* purposes is mixed question of law and fact, and trial court's determination on this issue will not be disturbed unless clearly erroneous).

McDevitt to continue. McDevitt responded that he could. Before beginning the walk and turn test, Whelchel asked McDevitt if there was anything wrong with his legs that would prevent him from walking in a straight line.

The record also shows that McDevitt knew that he was not required to do everything Whelchel asked him to do. When Whelchel asked him to blow into the portable breath test, he refused. He also refused to inform Whelchel of any medications that he was taking. Thus, the trial court's conclusion that McDevitt voluntarily consented to the tests was supported by the evidence of record.

3. McDevitt claims that the evidence was insufficient for a rational trier of fact to conclude beyond a reasonable doubt that he was under the influence of alcohol to the extent that he was a less safe driver. We disagree.

The state may prove this offense by "evidence of (i) erratic driving behavior, (ii) failure to pass field sobriety tests, and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that [alcohol] made it less safe for the defendant to drive."[10] Whelchel testified that McDevitt sped through a residential area, crossed the centerline, drove on the wrong side of the road, drifted in and out of his lane, smelled strongly of alcohol, had a red face, bloodshot and watery eyes, and slurred speech, was unsteady on his feet, and failed three field sobriety tests. Whelchel also testified and the recording showed that McDevitt was unable to recite a portion of the alphabet and was unwilling to take the portable breath test or the state-administered chemical breath test. Finally, Whelchel offered his opinion that McDevitt was under the influence of alcohol to the extent he was a less safe driver. We conclude that the state presented sufficient evidence to support the jury's finding that McDevitt was guilty beyond a reasonable doubt of driving under the influence of alcohol to the extent he was a less safe driver.[11]

McDevitt presented testimony from a doctor that his medications could have caused the clues Whelchel observed during the HGN test and could have influenced his performance on the walk and turn test and the one-leg stand. He argues that this testimony showed that Whelchel's testimony regarding the evidence of impairment was not credible. However, on appeal, we do not weigh evidence or determine witness credibility; those are functions of the jury.[12] Instead, we construe the evidence in the light most favorable to the verdict to

---

[10] *Hendrix v. State*, 273 Ga. App. 792, 796 (3) (a) (616 SE2d 127) (2005) (citation and punctuation omitted).

[11] See *Kuehne v. State*, 274 Ga. App. 668, 669 (1) (618 SE2d 702) (2005).

[12] *Moore v. State*, 274 Ga. App. 432 (618 SE2d 122) (2005).

determine whether it was sufficient to authorize a rational trier of fact to find McDevitt guilty of this offense beyond a reasonable doubt.[13] Under this standard, we conclude that the evidence was sufficient.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JUNE 25, 2007.

*Head, Thomas, Webb & Willis, William C. Head,* for appellant.
*Shawn E. LaGrua, Solicitor-General, Wesley B. Tailor, Assistant Solicitor-General,* for appellee.

