## A10A0397. BRAMLETT v. THE STATE.
(691 SE2d 333)

MIKELL, Judge.

Following a jury trial, Mitchell Curtis Bramlett was convicted of driving under the influence of alcohol to the extent it was less safe for him to drive and speeding.[1] Bramlett appeals, asserting in his sole enumeration of error that the trial court erred by denying his motion to suppress evidence of his performance of two field sobriety tests, the walk and turn and the one-leg stand. He argues that his performance of these two tests was not consensual. Finding no error, we affirm.

On appellate review of a trial court's order concerning a motion to suppress evidence, three principles should guide our interpreta-

---

[1] The jury found Bramlett guilty of both speeding (Count 2) and speeding in excess of the posted speed limit (Count 3). The record indicates that these two counts were merged at sentencing.

tion of the trial court's judgment of the facts.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

Moreover, "in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial."[3]

So construed, the record shows the following. Deputy Matt Runion of the Forsyth County Sheriff's Office testified at trial[4] that on December 14, 2007, he observed Bramlett driving over the speed limit and wandering partway out of his lane of travel. Runion activated his blue lights, but Bramlett, who was the only occupant of his car, continued to drive slowly and passed several places he could have stopped. Eventually, he pulled into a daycare center entrance, nearly striking a gate. When Runion approached the vehicle, he asked Bramlett to produce his driver's license, but Bramlett was very slow to do so; finally, Runion had to ask him to take it out of his wallet. While standing next to Bramlett's vehicle, Runion detected a strong odor consistent with an alcoholic beverage coming from within the vehicle. After Bramlett complied with Runion's request that he step out of the vehicle, Runion could still smell the same strong odor of alcohol, and he also observed that Bramlett was unsteady on his feet, swayed noticeably, and walked unsteadily. Runion also noticed that Bramlett's speech was "thick," his face was "sluggish," and his eyes were bloodshot and watery. In response to Runion's question, however, Bramlett denied that he had been drinking.

Runion then asked Bramlett to take a preliminary breath test, but Bramlett refused, saying "I have the right not to take this." Runion then asked him to submit to the horizontal gaze nystagmus

---

[2] (Footnote omitted.) *Tune v. State*, 286 Ga. App. 32 (648 SE2d 423) (2007).

[3] (Punctuation and footnote omitted.) *McDevitt v. State*, 286 Ga. App. 120 (648 SE2d 481) (2007).

[4] The record does not contain a transcript of the hearing on Bramlett's motion to suppress.

(HGN) test, and Bramlett agreed. During the HGN test, Runion observed six out of six possible clues indicating impairment. Runion then asked Bramlett to perform additional field sobriety tests, and Bramlett complied. Runion administered the tests and determined that Bramlett exhibited four of eight possible clues on the walk and turn test; that Bramlett was unable to perform the one-leg stand test and finally quit trying; and that Bramlett was also unable to recite the alphabet, either starting at E or, on a second try, starting at A. Runion testified that based on his experience and training, and based on his observations that night and on the results of the field sobriety tests, he formed the opinion that Bramlett was a less safe driver and was impaired by alcohol. Runion then arrested Bramlett, charging him with driving under the influence of alcohol to the extent he was a less safe driver. Runion then read him Georgia's implied consent warning, and asked him to take the state-authorized breath test. Bramlett refused.

Before trial, Bramlett moved in limine to suppress evidence of the results of the field sobriety tests. After a hearing, the trial court denied the motion, concluding that Bramlett was not "in custody" at the time the field sobriety tests were administered, and therefore that Runion was not required to read Bramlett the *Miranda* warnings before administering the tests.[5] The trial court's conclusion is supported by the evidence and will not be disturbed on appeal.[6]

On appeal, Bramlett argues that the trial court erred in admitting evidence of the results of his performance on two of the field sobriety tests (the walk and turn and the one-leg stand), because he did not voluntarily consent to perform these tests. After construing all the evidence in favor of the trial court's findings, we affirm.

The issue presented here is whether Bramlett was compelled to perform these field sobriety tests in violation of the Georgia Constitution's guaranty that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating."[7] The term "testimony" in this constitutional provision has been held by

---

[5] See *Evans v. State*, 267 Ga. App. 706, 706-707 (1) (600 SE2d 671) (2004) ("roadside questioning at a routine [traffic] stop does not constitute a custodial arrest") (footnote omitted). Accord *Grodhaus v. State*, 287 Ga. App. 628, 631 (1) (653 SE2d 67) (2007) (evidence of results of field sobriety tests admissible where officer made no statement nor took any overt action "that would cause a reasonable person to believe that he was not merely temporarily detained during an investigation") (footnote omitted).

[6] See *Loden v. State*, 271 Ga. App. 632, 633 (610 SE2d 593) (2005) ("The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous") (punctuation and footnote omitted).

[7] Ga. Const. of 1983, Art. I, Sec. I, Par. XVI.

the Supreme Court of Georgia to include all types of evidence.[8] Thus, "[t]he constitutional guaranty protects one from being compelled to furnish evidence against himself, either in the form of oral confessions or incriminating admissions of an involuntary character, or of *doing an act* against his will which is incriminating in its nature."[9]

In *Montgomery v. State*,[10] and more recently in *Clark v. State*,[11] we concluded that a DUI suspect had not been compelled to perform field sobriety tests in violation of his right against self-incrimination, where "he was not threatened with criminal sanctions for his failure to perform the tests; he was neither physically forced to do the tests, nor was there a show of force tantamount to an actual use of force; and he did not refuse to perform the tests."[12] In the case at bar, as in *Montgomery* and *Clark*, there was no evidence of any threats or force by the investigating officer.[13] And under Georgia law, an investigating officer is not required to advise a suspect that his performance of field sobriety tests is voluntary.[14] The evidence authorized the trial court to find that Bramlett voluntarily performed the field sobriety tests after being asked by Runion to do so.

Further, the record also shows that Bramlett knew that he was not required to perform every test requested by Runion. When Runion asked him to perform the preliminary breath test, Bramlett refused. Thus, "the trial court's conclusion that [Bramlett] voluntarily consented to the tests was supported by the evidence of record."[15] Accordingly, the court did not err in refusing to suppress evidence of the results of Bramlett's performance of the tests.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 25, 2010.

*Banks & Stubbs, Rafe Banks III, Daisy D. Weeks*, for appellant. *Leslie C. Abernathy, Solicitor-General*, for appellee.

---

[8] *Aldrich v. State*, 220 Ga. 132, 134 (137 SE2d 463) (1964). Accord *Clark v. State*, 289 Ga. App. 884, 885 (1) (658 SE2d 372) (2008).

[9] (Citation and punctuation omitted; emphasis in original.) *Aldrich*, supra. Accord *Clark*, supra.

[10] 174 Ga. App. 95 (329 SE2d 166) (1985).

[11] Supra.

[12] (Punctuation and footnote omitted.) Id., quoting *Montgomery*, supra at 96 (1).

[13] See *Clark*, supra; *Montgomery*, supra.

[14] *State v. Leviner*, 213 Ga. App. 99, 103 (4) (443 SE2d 688) (1994) (where suspect was not yet in custody, officer was not required to inform suspect that suspect's performance of field sobriety tests was voluntary, even where officer directed suspect to perform the tests).

[15] *McDevitt*, supra at 123 (2).