**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0527. THE STATE v. JUNG.

MCMILLIAN, Judge.

In February 2015, Jae Sun Jung was charged with several DUI-related violations. Following a hearing, the trial court granted Jung's motion to suppress the results of the state-administered test of his breath. The State appeals from that order, asserting that the trial court erred in finding that Jung did not voluntarily consent to the test. For the reasons set forth below, we affirm.

"When a motion to suppress is heard by the trial judge, that judge sits as the trier of facts." (Citation and punctuation omitted.) *Hughes v. State*, 296 Ga. 744, 746 (770 SE2d 636) (2015). In reviewing the trial court's ruling on a motion to suppress, "an appellate court generally must accept those findings unless they are clearly erroneous" and "must construe the evidentiary record in the light most favorable to

the factual findings and judgment of the trial court." Id. In addition, "an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court." Id.

So viewed, the record shows that at approximately 4:30 a.m. on October 2, 2014, the Gwinnett County Police Department responded to a motor vehicle accident on Dublin Ridge Trail in Duluth.[1] The responding officer observed one vehicle with significant rear-end damage pushed onto a curb. He also observed a white convertible with front-end damage nearby. The driver, identified as Jung, was leaning against the vehicle. When the officer approached Jung, he noticed a strong odor of alcohol and saw that his eyes were bloodshot and watery. Jung explained that he was driving down the street after leaving his girlfriend's house and hit the other car. Jung's speech was slurred and mumbled, and he had trouble walking or even standing on his own without support.

When the officer asked if he had been drinking, Jung responded, "Yes, but I don't drinking and driving." He denied needing medical attention and did not appear to have any injuries. Jung agreed to participate in field sobriety evaluations, but the officer had to assist him in walking to a nearby driveway because he was stumbling

---

[1] The record contains no video or audio recording of the traffic stop.

and staggering. Once away from the road, the officer performed the horizontal gaze nystagmus ("HGN") test and observed six out of six clues, indicating an alcohol concentration of .08 grams or more. The officer then instructed Jung on how to perform the walk and turn evaluation, which indicated eight out of eight clues. Lastly, the officer had Jung perform the one leg stand and observed three of four clues. Based on the results of the field evaluations, the officer asked Jung to blow into a portable breath test. Jung replied, "Yes," and his breath tested positive for alcohol.

Believing that Jung was driving under the influence of alcohol with an alcohol concentration of .08 grams or more, the officer placed him under arrest. After placing Jung in the back of his patrol vehicle, the officer read him Georgia's implied-consent notice for drivers over the age of 21. When asked, "Will you submit to the state-administered chemical test of your breath under the implied consent law," Jung responded, "Yes." The officer later testified that he read the notice in a "steady and monotone" voice. He further testified that Jung appeared to understand all of his questions and never indicated that he did not understand or that he needed an interpreter. He denied ever yelling at, using force against, or making promises or threats to Jung. In a supplemental police report, the officer indicated that Jung

appeared "confused" and failed to follow instructions on the HGN and one leg stand tests.

At the police station, another officer administered the breath test after instructing Jung in an even tone on how to perform the test. That officer testified that Jung appeared to understand the instructions, did not ask any questions about the test, and never stated that he wished to refuse the test. He also denied ever raising his voice or using force against Jung. Jung was later charged, via accusation, with driving under the influence to the extent it was less safe for him to drive (OCGA § 40-6-391 (a) (1)), driving under the influence per se (OCGA § 40-6-391 (a) (5)), and following too closely. Jung filed a motion in limine to suppress the results of the state-administered breath test, as amended, arguing that he did not voluntarily consent to the test. Following a hearing at which both officers testified regarding the circumstances surrounding the traffic stop and subsequent breath test, the trial court entered an order granting Jung's motion. This appeal followed.[2]

In its sole enumeration of error, the State asserts that the trial court failed to determine whether Jung's consent to take the state-administered breath test was

---

[2] See OCGA § 5-7-1 (a) (4) (permitting a direct appeal when the State's evidence has been ruled inadmissible).

voluntary under the totality of the circumstances. "The Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution both protect an individual's right to be free of unreasonable searches and seizures[] and apply with equal force to the compelled withdrawal of blood, breath, and other bodily substances." *Kendrick v. State*, 335 Ga. App. 766, 768 (782 SE2d 842) (2016). "Thus, a warrantless search is presumed to be invalid, and the State has the burden of showing otherwise." *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015).

"Historically, we considered a defendant's affirmative response to the reading of the implied consent notice as sufficient to allow a search of his or her bodily fluids without further inquiry into the validity of the defendant's consent."[3] (Citations omitted.) *Kendrick*, 335 Ga. App. at 769. However, in *Williams*, the Georgia Supreme

---

[3] Another well-recognized exception to the warrant requirement in the context of a state-administered test is the presence of exigent circumstances. See *Williams*, 296 Ga. at 819. However, the Supreme Court of the United States has rejected a per se rule that the natural metabolization of alcohol constitutes an exigency justifying an exception to the Fourth Amendment's search warrant requirement for nonconsensual testing in all DUI cases. *Missouri v. McNeely*, 569 U.S. 1552, 1563 (II) (B) (133 SCt 1552, 185 LE2d 696) (2013). Instead, the Supreme Court held that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically." Id. Here, however, the State does not argue that exigent circumstances supported testing Jung's breath. Thus, we limit our analysis to the issue of consent.

5

Court rejected this rule automatically equating an affirmative response with actual consent to search, holding instead that "mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant." *Williams*, 296 Ga. at 822. Thus, the State is required "to demonstrate *actual consent* [for state-administered testing] for the purpose of exception to the warrant requirement." (Emphasis in original.) Id. And in determining whether the defendant gave actual consent to a state-administered breath test, the trial court is required to address "the voluntariness of the consent under the totality of the circumstances." Id. at 823.

Under Georgia law, "voluntariness must reflect an exercise of free will, not merely a submission to or acquiescence in the express or implied assertion of authority." (Citation and punctuation omitted.) *State v. Bowman*, __ Ga. App. __ (Case No. A16A0555, decided on June 7, 2016). In making this determination, we consider a number of factors, including "prolonged questioning; the use of physical punishment; the accused's age, level of education, intelligence, length of detention, and advisement of constitutional rights; and the psychological impact of these factors on the accused." (Citations omitted.) Id. at __. And "no single factor is controlling."

6

(Citation omitted.) *State v. Tye*, 276 Ga. 559, 560 (1) (580 SE2d 528) (2003). Thus, the trial court must "consider whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter." (Citations and punctuation omitted.) *Kendrick*, 335 Ga. App. at 769. "Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent." (Citations and punctuation omitted.) Id.

Here, in its order granting the motion to suppress, the trial court first noted that the responding officer had articulable suspicion for the stop and probable cause to arrest Jung for driving under the influence. The trial court then stated that the primary question presented in this case is "whether or not the Defendant voluntarily consented to the state administered test." The trial court then addressed the various factors presented during the hearing, noting that the responding officer believed Jung appeared to understand him, that the responding officer did not raise his voice or use any weapons or other force, and that he read the statutory implied consent warnings to Jung. However, the trial court also found that Jung was "confused when he was stopped as well as during the walk and turn field sobriety evaluation and was unable to follow instructions." Thus, the trial court concluded that Jung "lacked the capacity

7

to consent based upon his confusion and high level of intoxication"[4] and that the State "was only able to show that Defendant acquiesced to the officer's request that he submit to a breath test but was unable to show actual consent."

On appeal, the State argues that the trial court focused exclusively on Jung's "confusion and high level of intoxication" to determine whether his consent was voluntary and failed to give careful consideration of all the factors pertinent to assessing the totality of the circumstances. However, the trial court clearly considered factors other than Jung's confusion and high level of intoxication. Moreover, we are not aware of any requirement that the trial court expressly address each relevant factor in its order, particularly when the State did not present evidence on each of the factors. In addition, at the motion to suppress hearing, the trial court acknowledged that although *Williams* involved a blood test, its holding would apply in the context of a breath test as well, stating, "As I read it a search is a search."[5] And in its order, the trial court expressly states that it considered "Defendant's motion, oral arguments

---

[4] The order specifically noted that the results of the breath test were 0.228 and 0.221.

[5] See *Kendrick*, 335 Ga. App. at 768 (individual's right to be free of unreasonable search and seizure applies with equal force to compelled withdrawal of blood and breath).

by the State and Defendant, evidence presented, all matters of record and the applicable and controlling law." Accordingly, we cannot say that the trial court failed to consider the totality of the circumstances as presented by the evidence and directed by *Williams*.

The State nonetheless argues that the trial court erred in giving too much weight to Jung's level of intoxication. However, this Court recently rejected this very argument and found that a defendant's level of intoxication may be an appropriate factor in determining the voluntariness of consent under the totality of the circumstances. See *Bowman*, __ Ga. App. at __ (affirming trial court's grant of motion to suppress blood test results where trial court relied on evidence that defendant was "significantly intoxicated" when he gave consent to the test). Our Supreme Court has also held that a high level of intoxication may be sufficient to support a trial court's finding that a statement is involuntary. *Clay v. State*, 290 Ga. 822, 826 (1) (B) (725 SE2d 260) (2012). And although the responding officer testified that Jung appeared to understand him, he also noted in his supplemental police report that Jung was confused and failed to follow his instructions on the HGN test and the one leg stand test. The trial court was authorized to accept or reject any

9

portion of the responding officer's testimony. See *Brown v. State*, 293 Ga. 787, 804 (3) (b) (2) (750 SE2d 148) (2013).

Evaluating the totality of the circumstances in this case, we are mindful that "in the absence of evidence of record *demanding* a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress." (Citation and punctuation omitted; emphasis in original.) *State v. Durrence*, 295 Ga. App. 216, 218 (671 SE2d 261) (2008). Here, the evidence supports the trial court's findings and does not demand a contrary conclusion. Accordingly, we affirm the trial court's order granting Jung's motion to suppress the results of the state-administered breath test.

*Judgment affirmed. Miller, P. J., and McFadden, J., concur*.