**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 15, 2017**

# In the Court of Appeals of Georgia

A16A2152. THE STATE v. BROGAN.

MCFADDEN, Presiding Judge.

The state charged Colleen Brogan with driving under the influence of alcohol, OCGA § 40-6-391 (a) (1) & (5), among other offenses. The trial court granted Brogan's motion to suppress evidence of her blood alcohol level obtained through a warrantless blood test, finding that the state did not show Brogan voluntarily consented to the blood test. The state appeals. Because the evidence presented at the hearing on the motion to suppress authorized the trial court's ruling, we affirm.

A blood test is a search within the meaning of the Fourth Amendment. *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015). A warrantless search is "per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Thus, a warrantless search is presumed

to be invalid, and the [s]tate has the burden of showing otherwise." Id. (citations omitted). In this case, the state argued that no search warrant was needed because Brogan consented to the blood test. See id. at 821 ("it is well settled in the context of a DUI blood draw that a valid consent to a search eliminates the need for . . . a search warrant") (citations omitted). Consequently, to meet its burden, the state was required to show that Brogan acted freely and voluntarily in giving actual consent. Id. at 821-822; *State v. Flores-Gallegos*, 337 Ga. App. 79, 82 (785 SE2d 911) (2016). After receiving evidence at a hearing, the trial court granted the motion to suppress, finding that the state had not "met its burden in proving voluntary consent to the arresting officer's request for a blood sample."

We first consider our standard of appellate review, which requires us to determine whether the facts material to the ruling on the motion to suppress are disputed or undisputed. See *State v. Underwood*, 283 Ga. 498, 500-501 (661 SE2d 529) (2008). The facts material to whether Brogan voluntarily consented to the blood test are disputed. The law enforcement officer who arrested Brogan testified that he believed she had consented to the test after he read her Georgia's implied consent notice, see OCGA § 40-5-67.1, but he could not specifically recall how she demonstrated her consent. A videorecording of the officer's interaction with Brogan

2

exists, but the facts material to whether Brogan consented are not indisputably discernable from it. See *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015) (reviewing court may consider "facts indisputably discernable from a videotape") (citation omitted). The videorecording does not capture Brogan's alleged consent either visually or audibly. And the hearing transcript shows that, although the officer testified that he believed Brogan was capable of listening to him and making decisions during their encounter, the trial court questioned this point after hearing the officer's testimony and viewing the videorecording. Compare *Clay v. State*, 290 Ga. 822, 825 (1) (A) (2) n. 1 (725 SE2d 260) (2012) (finding that combination of videorecording and testimony regarding voluntariness of defendant's consent necessitated credibility determinations by trial court) with *State v. Depol*, 336 Ga. App. 191 (784 SE2d 51) (2016) (finding that controlling facts regarding defendant's actual consent to breath test were undisputed because they were plainly discernable from videorecording).

"When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (citation omitted). If the trial court has made express findings of fact, we must accept those findings unless they are

clearly erroneous, construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and limit our consideration of the disputed facts to those expressly found by the trial court. Id. The trial court, however, is not required to make express findings of fact after a hearing on a motion to suppress. *Barnes v. State*, 228 Ga. App. 44 (491 SE2d 116) (1997). In such a case, we nevertheless construe the evidence most favorably to uphold the trial court's judgment. Id.

The trial court's order contains only one statement that arguably could be viewed as a finding of fact — the statement that the state had not "met its burden in proving voluntary consent to the arresting officer's request for a blood sample." See, e.g., *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975) (in determining whether the state met its burden of showing that accused voluntarily consented to a search, "[v]oluntariness is a question of fact to be determined from all the circumstances") (citations and punctuation omitted); *Rogue v. State*, 311 Ga. App. 421, 424 (715 SE2d 814) (2011) ("Whether consent [to search] is voluntarily given is a question of fact for the trial court to determine from all the circumstances.") (citation omitted). But see, e.g., *Clay*, supra, 290 Ga. at 831 (2) (D) (implying in dicta that whether defendant consented to search presented legal issue); *Kendrick v. State*,

4

335 Ga. App. 766, 768 (782 SE2d 842) (2016) (viewing issue of whether defendant freely and voluntarily consented to breath test to be an issue for the appellate court to resolve on de novo review of undisputed evidence). But whether we treat the trial court's determination regarding voluntariness as a finding of fact or a conclusion of law, because the evidence in this case is disputed we construe that evidence in the light most favorable to the trial court's judgment. "[I]n the absence of evidence of record *demanding* a finding contrary to the judge's determination, [we] will not reverse the ruling sustaining a motion to suppress." *State v. Bowman*, 337 Ga. App. 313, 318 (787 SE2d 284) (2016) (citations and punctuation omitted; emphasis in original).

So viewed, the hearing evidence showed that in the early afternoon on May 13, 2015, a law enforcement officer was dispatched to investigate a car stopped in the middle of a busy intersection. Ambulance personnel were on the scene when he arrived; they had found the car in gear and Brogan asleep behind the wheel.

The officer roused Brogan and spoke with her, and he observed that her face looked lethargic and "droopy" and her speech was slow and slurred. When Brogan stepped out of the car at the officer's request, she was so unsteady that the officer believed she could not safely perform field sobriety tests. Once out of the car, Brogan

held out her arms in a stiff, unnatural posture; she told the officer she was doing this so that he could take her blood pressure, even though the ambulance personnel had taken her blood pressure moments before. In the videorecording of the encounter, Brogan appears confused and lacking control over her physical movements, and she gives tentative and sometimes nonresponsive or incomprehensible answers to the officer's questions.

The officer did not smell any alcohol on Brogan or in her car, and he told Brogan that he did not suspect she was impaired by alcohol. He asked Brogan if she had taken any drugs, and she responded that she had taken allergy medication. The officer told Brogan that he was worried about her and suggested she get medical attention. When Brogan replied that she wanted to go home, the officer told her that she could not drive herself home. At that point, Brogan turned away from the officer who, believing that Brogan was heading back to her car, handcuffed her and placed her in his patrol vehicle. He did not tell her that she was under arrest or explain why he had detained her.

Once Brogan was in the patrol vehicle, the officer read her Georgia's informed consent notice. He then asked her if she consented to a blood test. The officer testified that Brogan bobbed her head, but he conceded that he "really c[ould]n't speak to how

6

she articulated yes," and no answer can be heard on the videorecording. The officer then drove Brogan to a hospital, where her blood was drawn for testing. The results of the blood test were not entered into evidence; however, at the hearing the prosecutor and defense counsel agreed that the test showed she had an extremely high blood alcohol level.

This evidence does not demand that we reverse the trial court's ruling sustaining Brogan's motion to suppress. See *Bowman*, supra, 337 Ga. App. at 318. It is not clear from the evidence that Brogan gave any affirmative response to the implied consent notice, but even if she did respond affirmatively to it, our Supreme Court in *Williams*, supra, 296 Ga. at 821-822, "rejected [a] per se rule automatically equating an affirmative response to the implied consent notice with actual consent to a search within the meaning of the Fourth Amendment. Instead, courts must now conduct a case-by-case analysis, considering the totality of the circumstances." *Kendrick*, supra, 335 Ga. App. at 769 (citations omitted).

The evidence in this case, viewed in the light most favorable to the judgment, showed that Brogan was extremely intoxicated and confused during her encounter with the officer. These factors supported the trial court's conclusion that she did not voluntarily consent to the blood test. See *State v. Jung*, 337 Ga. App. 799, 803-804

7

(788 SE2d 884) (2016); *State v. Williams*, 337 Ga. App. 791, 796 (788 SE2d 860) (2016); *Bowman*, supra, 337 Ga. App. at 317-318; *State v. Durrence*, 295 Ga. App. 216, 217-218 (671 SE2d 261) (2008). The evidence also showed that the interaction between the officer and Brogan was ambiguous. The officer did not tell Brogan she was under arrest; instead, he told her that he did not think she was under the influence of alcohol and he expressed concern about her medical condition and her need for medical attention. While Brogan's knowledge of her right to refuse consent to a search was "not the sine qua non of an effective consent," it nevertheless was a factor that the trial court could take into account, *Kendrick*, 335 Ga. App. at 769 (citation and punctuation omitted), and these circumstances could be construed to cast doubt on that knowledge.

In its brief, the state essentially argues that the evidence supported a finding of voluntary consent. Were we reviewing a denial of a motion to suppress, this argument might be persuasive. But we are reviewing a grant of a motion to suppress, and the evidence "[did] not demand a finding contrary to the trial court's decision." *Durrence*, supra, 295 Ga. App. at 218. For this reason, we must affirm. *Bowman*, supra, 337 Ga. App. at 318; *Durrence*, supra, 295 Ga. App. at 218.

*Judgment affirmed. Miller, P. J., and McMillian, J., concur.*