**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 4, 2022**

# In the Court of Appeals of Georgia

A22A0474. THE STATE v. ORTIZ.

PHIPPS, Senior Appellate Judge.

In this DUI case, the State appeals from the trial court's order suppressing the results of defendant Luis Ramos Ortiz's state-administered breath test and field sobriety evaluations. The court concluded that Ortiz lacked the capacity to give actual consent for the tests based on a language barrier. The State argues that Ortiz voluntarily performed the tests and that the trial court failed to properly consider the totality of the circumstances in suppressing the breath test. Because the evidence presented at the hearing on the motion to suppress authorized the trial court's ruling, we affirm.

When reviewing a trial court's ruling on a motion to suppress, this Court "must construe the evidentiary record in the light most favorable to the trial court's factual

findings and judgment."*Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018). In so doing, we "must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact"; however, we may "consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape." Id. at 559 (1) (citations and punctuation omitted). That being said, this Court may not "supplement[] the trial court's findings with additional findings of [our] own that [rely] on testimony that inherently presented questions of credibility and were not 'indisputably discernible' from the video of the stop." Id. "Finally, although we defer to the trial court's factfinding, we owe no deference to the trial court's legal conclusions. Instead, we independently apply the law to the facts as found by the trial court." *State v. Culler*, 351 Ga. App. 19, 19 (830 SE2d 434) (2019) (citation omitted). With these principles in mind, we turn to the facts adduced at the suppression hearing in this case.

Viewed in the light most favorable to the trial court's judgment, the record shows that in September 2019, Gwinnett County Police Officer Barber, who had been trained in DUI detection and field sobriety evaluations, stopped to help other officers with a traffic stop. He was told that the driver of the vehicle, who was identified as

2

Ortiz, had failed to maintain his lane multiple times. Officer Barber was further told that Ortiz was "kind of hard to understand." Indeed, Officer Barber testified that Ortiz had a Spanish accent and his speech was slow and slurred. The video-recording shows examples of Ortiz's heavily accented speech as he occasionally responds to the officers. Officer Barber admitted, and the video-recording shows, that he had a difficult time understanding Ortiz during the encounter. In fact, the video-recording shows that at one point Barber turned to another officer and said, "I don't understand what he's saying." However, Barber admitted on cross-examination that he did not ask Ortiz if he understood English or wanted an interpreter. According to the officer, although Ortiz asked him to repeat what he was saying a few times, Ortiz appeared to respond appropriately to the officer's questions.

When Officer Barber approached Ortiz's vehicle, he noticed a strong odor of alcohol emanating from Ortiz and the vehicle, he observed that Ortiz's eyes were glazed-over and bloodshot, and he asked Ortiz whether he had consumed any alcoholic beverages. Ortiz eventually responded that he had consumed two beers. The officer then repeatedly asked what type of beer, receiving non-responsive and difficult to understand answers to the questions. Based on the smell of alcohol and the manifestations observed, Officer Barber asked Ortiz if he would submit to field

3

sobriety evaluations. The video-recording shows that Officer Barber questioned Ortiz about performing these tests at least five times, and each time was met with a non-responsive answer; once Ortiz responded that he lived nearby, and another time he responded that he was nervous. Officer Barber then stated, "If you can just come out here, and I can do the field tests on you, I can make sure you're good, and then you won't have to be nervous anymore, right?" but Ortiz still did not respond. It was not until another officer approached the car, gestured for Ortiz to exit the car, and asked Ortiz two more times about performing the tests that Ortiz apparently indicated — by slightly moving his head from side to side and up and down in a gesture that arguably could be interpreted as a "yes" — that he would perform the tests.

The officer testified that he first instructed Ortiz regarding the horizontal gaze nystagmus test, and Ortiz indicated he understood the evaluation instructions, did not have any questions about the evaluation, never asked to stop the evaluation, and successfully performed the evaluation. According to the officer, Ortiz scored four out of six clues, indicating impairment. The officer testified that he then instructed Ortiz regarding the walk-and-turn evaluation, and Ortiz indicated he understood the evaluation instructions, did not have any questions about the evaluation, and successfully performed the evaluation. Two clues out of eight indicate impairment,

4

and, according to the officer, Ortiz exhibited four clues. Finally, the officer testified that he instructed Ortiz regarding the one-legged stand test, and Ortiz once again indicated he understood the evaluation instructions, did not have any questions about the evaluation, and successfully performed the evaluation. According to the officer, Ortiz exhibited one clue out of four possible clues, indicating impairment. Ortiz was then sent to his car to wait. Loud trucks can be heard periodically in the background of the gas station parking lot where the stop occurred, and the officer testified that he believed Ortiz's failure to understand some of the questioning was attributable to the noise in the gas station parking lot rather than his inability to speak English.

After speaking with other officers, Officer Barber brought a portable breath test machine to Ortiz's car and attempted to explain that he wanted Ortiz to blow into the machine using hand and mouth gestures. However, the officer had difficulty getting the machine to work, so he put it away. The officer testified that based on the findings of impairment with all three field sobriety evaluations, as well as Ortiz's failure to maintain lane and physical manifestations, the officer believed Ortiz was driving while under the influence of alcohol to the extent that it was less safe to drive, and he arrested Ortiz.

Ortiz was placed in the officer's patrol car. He was asked a few times whether someone could pick up his car, and one of the officers gestured like he was driving and used Spanish words to help Ortiz understand. Ortiz later called someone to pick up the car, speaking only Spanish.

After determining Ortiz's age from his driver's license, Officer Barber read Ortiz the implied consent notice for suspects age 21 or over. The officer testified that when he asked whether Ortiz would submit to a state-administered breath test, Ortiz did not understand at first, but the officer was "able to get him to understand," and Ortiz eventually consented when he "shook" his head "yes." On cross-examination, Officer Barber admitted that he had to ask Ortiz three times if he would submit to the test; the first time the officer asked, Ortiz did not respond, and the second time the officer asked, Ortiz responded that he did not understand. The video-recording shows Ortiz twice stating, "I don't understand." Officer Barber never asked what Ortiz did not understand; he simply repeated the question, received a shake of Ortiz's head, and heard Ortiz say, "I take it." The video-recording captured the interaction, showing the officer using both hand and mouth gestures while trying to explain that he was asking about a blowing test — essentially using the same mimes he used for the previously

6

attempted portable breath test machine — and Ortiz finally responding, "I take it," using an inflection suggesting a question.

Ortiz was transported to the Gwinnett County Jail, where the breath test was administered approximately one hour after his traffic stop occurred.[1] According to Officer Barber, Ortiz never said he did not want to submit to the test.

Ortiz was charged by accusation with driving under the influence to the extent he was less safe,[2] driving under the influence per se,[3] and failure to maintain lane.[4] Prior to trial, Ortiz filed a motion to suppress a number of items, including the results of his state-administered breath test and field sobriety evaluations, on various

---

[1] The State offered no evidence concerning the results of that test. However, the accusation filed against Ortiz charged him with DUI per se by having an alcohol concentration of ".08 grams or more."

[2] See OCGA § 40-6-391 (a) (1) (prohibiting any person from being "in actual physical control of any moving vehicle while … [u]nder the influence of alcohol to the extent that it is less safe for the person to drive").

[3] See OCGA § 40-6-391 (a) (5) (prohibiting any person from being "in actual physical control of any moving vehicle while … [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended").

[4] See OCGA § 40-6-48 (1) (providing that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety").

7

grounds. The trial court held a hearing on the motion to suppress, at which the State presented the testimony of Officer Barber and the video-recording of the traffic stop.

The trial court granted Ortiz's motion to suppress, concluding that, based on "the totality of the circumstances," the State failed to show that Ortiz gave "actual consent" because of a language barrier. According to the trial court, the evidence showed that "Ortiz did not seem to understand English very well, the officers had to repeat things several times[,]" Ortiz "was unresponsive to some questions and many needed to be repeated[,]" and "Ortiz seemed confused and did not seem to understand what was being said to him or asked of him." With regard to Ortiz's state-administered breath test, the trial court found,

> The video showed that the proper statutory implied consent warnings were timely read to Ortiz. However, when asked if he would consent to the test he stated he did not understand. The officer then asked Defendant a second and a third time if he would consent to taking the test and his response ultimately was "I take it." That sounded like it was either more of a question or he was just repeating what the officer had said to him.

The State appeals this ruling.

1. *State-administered breath test*. The State argues that the trial court erred in suppressing the results of Ortiz's state-administered breath test because the court did

8

not consider the totality of the circumstances when finding that Ortiz lacked the capacity to consent based on a language barrier. We disagree.

The Georgia Constitution provides that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. The Supreme Court of Georgia has held that the Georgia Constitution's prohibition against compelled self-incrimination prevents the State from forcing someone to submit to a state-administered breath test absent a valid warrant or other doctrine obviating the need for a warrant. *Olevik v. State*, 302 Ga. 228, 229, 252 (3) (b) (806 SE2d 505) (2017). This ruling was reaffirmed in *Elliott v. State*, 305 Ga. 179, 209 (III) (C) (ii) (824 SE2d 265) (2019). While valid consent can demonstrate that an individual was not compelled to give incriminating testimony when submitting to a state-administered breath test, see *Olevik*, 302 Ga. at 243 (2) (c) (iii), the State must show that the DUI suspect "gave *actual consent* to the [state-administered test], which would require the determination of the voluntariness of the consent under the totality of the circumstances." *Williams v. State*, 296 Ga. 817, 821, 823 (771 SE2d 373) (2015); accord *Olevik*, 302 Ga. at 248 (3) (a), 251 (3) (b) (concluding that "evaluating whether self-incrimination was compelled depends on the totality of the circumstances"); *Melton v. State*, 354 Ga. App. 828, 830-831 (841

9

SE2d 481) (2020) (finding that a trial court must address the voluntariness of a DUI suspect's consent to a breath test based upon the "totality of the circumstances"). "[W]hen relying on the consent exception . . . the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances." *Williams*, 296 Ga. at 821-822 (citation and punctuation omitted); see also *Melton*, 354 Ga. App. at 828.

The Supreme Court of Georgia has provided trial courts with guidance regarding factors that should be considered when determining the totality of the circumstances and whether the State has proven that the accused demonstrated actual, voluntary consent to submit to a state-administered breath test. See *Olevik*, 302 Ga. at 251 (3) (b). Such factors include

> the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

Id. (citation and punctuation omitted); accord *Holland v. State*, 347 Ga. App. 601, 605 (2) (820 SE2d 442) (2018). Other factors that may be considered are whether

deceptive police practices were used and whether the accused knew he had the right to refuse consent. *Olevik*, 302 Ga. at 251 (3) (b); *Holland*, 347 Ga. App. at 605 (2).

In reviewing the record in this matter, including the arresting officer's testimony and the video-recording of the officer's interaction with Ortiz at the traffic stop, we know that Ortiz was at least 21 years of age at the time of the stop, the officer did not raise his voice or use any weapons or force to coerce Ortiz into consenting, and the length of detention from the initial stop until Ortiz's purported consent to the breath test was approximately 33 minutes. However, there is no evidence as to Ortiz's level of education or intelligence, the State admits that Ortiz was not advised of his constitutional rights, and the video-recording shows that a number of officers were at the scene during the encounter with Ortiz.

The State argues that the trial court focused exclusively on Ortiz's language barrier to determine whether his consent was voluntary and failed to consider the totality of the circumstances. According to the State, Ortiz's consent should have been found voluntary because the totality of the circumstances showed that the officers did not use fear, intimidation, threat of physical punishment, or lengthy detention to obtain consent. However, "we are not aware of any requirement that the trial court expressly address each relevant factor in its order, particularly when the

11

State did not present evidence on each of the factors." *State v. Jung*, 337 Ga. App. 799, 803 (788 SE2d 884) (2016). Moreover, the trial court's order specifically states that the court considered "Defendant's motion, oral arguments by the State and Defendant, evidence presented, all matters of record[,] and the applicable and controlling law" "[i]n examining the totality of the circumstances." Accordingly, we cannot say that the trial court failed to consider all of the circumstances as presented by the evidence and directed by *Olevik*.

While the State of course would like this Court to focus primarily on Ortiz's purported affirmative response to the officer's question about consenting to a state-administered breath test, the trial court's order indicates that the court specifically took the officer's testimony into account, yet still determined that Ortiz lacked the capacity to provide actual consent based on the language barrier. This conclusion is supported by the officer's testimony and the video-recording of the traffic stop. For example, an officer who initially stopped Ortiz told Officer Barber that Ortiz was "kind of hard to understand," Officer Barber testified that Ortiz had a Spanish accent and his speech was slow and slurred, Officer Barber admitted and the video-recording shows that he had a difficult time understanding Ortiz throughout the encounter, and the video-recording of the stop shows examples of Ortiz's heavy accent as he

12

occasionally responds to the officers. In addition, Officer Barber's testimony and the video-recording demonstrate that he repeatedly had to ask Ortiz the same question, often receiving a non-responsive answer, at least one other officer had to assist Officer Barber in communicating with Ortiz, the officers attempted to communicate by using hand and mouth motions, officers used Spanish words to help them communicate with Ortiz, and Ortiz's purportedly affirmative "I take it" response to the breath test was said with an inflection suggesting a question.

Although the State counters that "[t]here was . . . no direct evidence in front of the court to determine [Ortiz's] proficiency in English," it is the State's burden to prove that Ortiz gave his consent freely and voluntarily. See *Williams*, 296 Ga. at 821; *Melton*, 354 Ga. App. at 828. Thus, the State had the burden of demonstrating that Ortiz sufficiently understood what was being said to him to provide actual, voluntary consent. And the facts in the record, detailed above, support the trial court's finding that he did not.

Finally, the State cites two decisions in which the Supreme Court of Georgia and this Court held that officers are not required to read the Georgia implied consent notice in the DUI suspect's native language or ensure that the accused understands the notice. See *Rodriguez v. State*, 275 Ga. 283, 287-288 (3) (565 SE2d 458) (2002)

13

("Implied consent warnings . . . are a matter of legislative grace, and due process does not require that the warnings be given in a language that the driver understands."); *Furcal-Peguero v. State*, 255 Ga. App. 729, 732-733 (566 SE2d 320) (2002) ("*[A]ll drivers are entitled only to be advised* of their rights under the implied consent law, that is, to have the implied consent notice read to them. The law does not require the arresting officer to ensure that the driver *understands* the implied consent notice.") (citations omitted). While we acknowledge that these two older decisions stand for the propositions posited by the State, they pre-date the Supreme Court of Georgia's adoption of the "actual consent" test based on the "totality of the circumstances" analysis to determine whether a DUI suspect's consent to perform testing was voluntary. See *Olevik*, 302 Ga. at 229, 252 (3) (b); *Williams*, 296 Ga. at 822-823.

Specifically, the Supreme Court of Georgia's more recent cases adopt the proposition that "mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect," *Williams*, 296 Ga. at 822, and "the fact that an officer reads a suspect the implied consent notice and otherwise complies with implied consent procedures does not mean that the suspect gives actual and voluntary consent to a particular test," *Elliott*, 305 Ga. at 222 (IV) (E). In neither decision cited by the State did the appellate

14

courts engage in the currently mandated proper analysis, which entails asking whether, viewing the totality of the circumstances, a DUI suspect gave actual, voluntary consent to perform the state-administered breath test. See *Olevik*, 302 Ga. at 229, 252 (3) (b); *Williams*, 296 Ga. at 822-823; *Melton*, 354 Ga. App. at 830-831. Consequently, the decisions in *Rodriguez* and *Furcal-Peguero* do not control the outcome in this case. Rather, whether a DUI suspect was read the implied consent notice in his native language or otherwise understood the implied consent notice are simply proper factors to be considered in determining whether the suspect gave actual consent under all of the circumstances.

"Evaluating the totality of the circumstances in this case, we are mindful that in the absence of evidence of record *demanding* a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress." *Jung*, 337 Ga. App. at 803 (citation and punctuation omitted); accord *State v. Brogan*, 340 Ga. App. 232, 236 (797 SE2d 149) (2017). "Moreover, we presume the trial court knew the law and faithfully and lawfully performed the duties devolved upon him by law. We will not presume the trial court committed error where that fact does not affirmatively appear." *O'Shields v. State*, 351 Ga. App. 800, 804 (1) (833 SE2d 290) (2019) (citation and punctuation omitted). Here, the trial court applied the

15

appropriate "totality of the circumstances" analysis to determine that Ortiz did not give actual consent to perform the state-administered breath test, and evidence supports the trial court's findings and does not demand a contrary conclusion. Accordingly, viewing the evidence most favorably to the trial court's findings and judgment, as required by our standard of review, *Caffee*, 303 Ga. at 557, we conclude that the trial court did not err when it granted the motion to suppress the results of Ortiz's state-administered breath test.

2. *Field sobriety evaluations*. The State argues that the trial court erred in suppressing Ortiz's field sobriety evaluation results because Ortiz was not coerced or forced to perform the tests. This argument also lacks merit.

The issue presented here — as with Ortiz's state-administered breath test — is whether Ortiz was compelled to perform the field sobriety evaluations in violation of the Georgia Constitution's guaranty that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. The term "testimony" in this constitutional provision has been held to include "*doing an act* against [an individual's] will which is incriminating in its nature." *Aldrich v. State*, 220 Ga. 132, 134 (137 SE2d 463) (1964) (citation and

16

punctuation omitted). This includes performing field sobriety evaluations. See *Bramlett v. State*, 302 Ga. App. 527, 530 (691 SE2d 333) (2010).

In a recent case, this Court adopted the *Olevik* factors — "the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused," *Olevik*, 302 Ga. at 251 (3) (b) (citation and punctuation omitted) — as factors to be considered in determining whether a suspect is compelled to give self-incriminating testimony or voluntarily consents when he participates in DUI field sobriety evaluations. See *Woods v. State*, 361 Ga. App. 844, 847-848 (2) (864 SE2d 194) (2021). We concluded that although the case differed from *Olevik* because the sobriety tests were taken before the accused's arrest and before the officer's reading of the implied consent notice — as they were in the present case — "[t]he totality of the circumstances test as explained in *Olevik*" should be applied. Id. at 848 (2) (citation and punctuation omitted).

The State, however, relies on *Bramlett* to support its argument that Ortiz voluntarily performed the field sobriety evaluations. In *Bramlett*, this Court affirmed a trial court's refusal to suppress evidence of the results of a defendant's field sobriety

evaluations based, in part, on the lack of evidence of any threats or force by the investigating officer. 302 Ga. App. at 530. The State argues that because the record shows that Ortiz was not coerced or forced to perform the field sobriety evaluations in this case, the trial court should have denied his motion to suppress the results of the evaluations. We disagree in light of the Supreme Court of Georgia's more recent pronouncements in *Olevik*, 302 Ga. at 229, 252 (3) (b), and *Williams*, 296 Ga. at 822-823, and our more recent pronouncement in *Woods*, 361 Ga. App. at 848 (2), regarding the proper analysis to employ in determining whether a DUI suspect gave actual consent to perform state-administered evaluations. Based on these decisions, we conclude that coercion and force are simply two factors to be considered under the totality of the circumstances. In fact, in *Bramlett*, this Court noted the existence of other factors suggesting valid consent, including the facts that the defendant knew he was not required to perform every test requested by the officer and even refused a breath test. 302 Ga. App. at 529-530.

The trial court in this case, after "examining the totality of the circumstances," granted Ortiz's motion to suppress the field sobriety evaluations, finding, as it did with the state-administered breath test, that Ortiz did not give actual, voluntary consent based on the language barrier. Although the State offered evidence that Ortiz

18

was not threatened or coerced to submit to the evaluations and understood some English because he appeared to properly perform the field sobriety tests and respond affirmatively to the officer's request that he submit to the evaluations, there also was evidence that there were a number of police officers at the scene, the officer requesting permission to perform the field sobriety evaluations did not ensure that Ortiz could speak English or advise him that he could refuse to perform the field tests, Ortiz spoke with a heavy Spanish accent and was difficult to understand, Ortiz repeatedly had difficulty understanding and appropriately responding to the officer's questions, Officer Barber asked Ortiz numerous times whether he would submit to field sobriety evaluations without receiving Ortiz's consent, and another officer gestured for Ortiz to exit the car and asked him two more times if he would perform the field sobriety evaluations before Ortiz finally moved his head in apparent acquiescence.

Here, the "totality of the evidence" supports the trial court's findings, and the record does not demand a finding contrary to the judge's determination that Ortiz did not give actual, voluntary consent to perform the field sobriety evaluations due to the language barrier. *Jung*, 337 Ga. App. at 803. See also *Huynh v. State*, 239 Ga. App. 62, 64 (2) (518 SE2d 920) (1999) ("The question of whether consent was given is a

fact question, and because there was competent evidence to support the trial court's ruling on this question, we will not disturb it.") (citation and punctuation omitted). Accordingly, the trial court did not err when it granted Ortiz's motion to suppress the results of his field sobriety evaluations.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*